634 So.2d 516 (1993)
Kenneth M. SESSOMS and Brenda Sessoms
v.
ALLSTATE INSURANCE COMPANY and Jessie White.
No. 90-CA-1026.
Supreme Court of Mississippi.
September 2, 1993.
As Modified on Denial of Rehearing March 17, 1994.
*517 Harry P. Sneed, Jr., Gulfport, for appellant.
Jimmie Brock Reynolds, Jr., Steen Reynolds Dalehite & Currie, Mildred M. Morris, Jackson, Robert W. Atkinson, and Harry R. Allen, Allen Cobb & Hood, Gulfport, for appellee.
Before HAWKINS, C.J., and PITTMAN and BANKS, JJ.
PITTMAN, Justice, for the Court:
This is an appeal from the Circuit Court of Harrison County, wherein Allstate Insurance Company was granted summary judgment on Brenda Sessoms's allegations of a bad faith breach of contract in handling her claim. This claim was the result of an automobile accident in which Sessoms's vehicle collided with Deanna Bellinger's vehicle after Sessoms swerved to avoid Jessie White's vehicle that pulled out in front of Sessoms. Allstate settled Bellinger's claim against Sessoms and paid all of Sessoms's medical expenses within the policy limits except for $37.17. Brenda and Kenneth Sessoms filed suit against Jessie White, an Allstate insured, in the hopes of being reimbursed for medical expenses incurred in excess of the policy limits. A bifurcated trial was ordered, thereby separating the bad faith claim against Allstate from the negligence claim against White. Allstate was granted summary judgment on the bad faith claim but the suit against White went to trial, wherein the jury found for the defendant White. Sessoms' subsequent motions for a J.N.O.V. and in the alternative, a new trial were denied. Sessoms has appealed both decisions. Finding no evidence of bad faith on the part of Allstate or any validity to Sessoms's appeal from the White decision, we hereby affirm.

I.
On February 20, 1987, Brenda Sessoms was driving her 1985 Chevrolet truck west on Pass Road in Long Beach, Mississippi. As she approached the intersection of Pass Road and Seal Avenue, a tan truck, later identified as being driven by Jessie White, pulled out from Seal Avenue in the west-bound lane of Pass Road, directly in front of Sessoms. When Sessoms swerved to the left to avoid the tan truck, she ventured into the eastbound lane of Pass Road and struck a truck driven by Deanna Bellinger. The tan truck driven by White escaped the collision. Both Sessoms and Bellinger were taken to the hospital for injuries sustained in the collision and both drivers later attributed the accident to the tan truck pulling out into Pass Road. Eight days following the accident, the identity of the driver of the tan truck was determined to be that of Jessie White. It was soon learned that both Brenda Sessoms and Jessie White had their automobile insurance through Allstate.
*518 Allstate opened two separate files and assigned two different adjustors to evaluate each claim. Cecil Snodgrass, an Allstate claims representative, was assigned to handle the claim filed by Bellinger on the Sessoms policy. Snodgrass stated that this was his only involvement with the Sessoms file and that he never saw the cross-file prepared by Pam Baker, the Allstate claims representative who handled the White file. Initially, Allstate denied any liability on the part of either Sessoms or White, but later found each to be 50% negligent in causing the accident. Allstate settled Bellinger's claim against Sessoms for $9,000 and also paid a claim to Bellinger on behalf of White.
Brenda Sessoms was paid $1,962.83 of her $2,000 medical payments coverage in order to cover her medical expenses. A May 20, 1987, letter from Allstate claims representative Bob Hodges gave Sessoms the history of all payments made pursuant to the policy. This letter informed Sessoms that $37.17 was still available under the policy limits. Brenda Sessoms allegedly forwarded more medical bills, but admits that she never requested that the insurance company pay them. She stated that Allstate paid the initial $1,962.83 in medical bills without any formal demand on her part. Sessoms claims to have incurred $12,687.61 in medical expenses in excess of the $2,000 policy limits. It was because of the excess expenses that Sessoms initiated a negligence suit against White. Sessoms claimed that after she was told that the tan truck was also an Allstate insured vehicle, Allstate terminated all contacts with her, except for the payment of $1,962.83 in medical expenses. Sessoms asserts the following assignments of error:
I. THAT THE APPELLANT SESSOMS, PLAINTIFFS BELOW, ALLEGING A BREACH OF CONTRACT OF AUTOMOBILE LIABILITY INSURANCE POLICY BY APPELLEE ALLSTATE INSURANCE COMPANY, DEFENDANT BELOW, DID ESTABLISH BY RESPONSIVE AFFIDAVITS OF PERSONAL KNOWLEDGE FACTS SUPPORTED BY ADMISSIONS IN PLEADING OF ALLSTATE TOGETHER WITH EVIDENCE DISCLOSED IN DISCOVERY TO ESTABLISH ALLSTATE DID BREACH THE SAID CONTRACT AND THAT THE ONLY AFFIDAVIT OF MOVANT ALLSTATE, TOGETHER WITH THE RECORD AND FACTS EVIDENCED IN DISCOVERY WHOLLY FAILED TO SHOW AN ABSENCE OF SUBSTANTIAL CONFLICT OF MATERIAL FACTS, AND THE SUMMARY JUDGMENT WAS PRECLUDED.
II. THAT SESSOMS WAS ENTITLED TO A NEW TRIAL ON COUNT II.
III. THAT THE SESSOMS ARE ENTITLED TO A NEW TRIAL ON ALL ISSUES AGAINST ALL DEFENDANTS.

II.

Did Allstate's actions constitute bad faith?
This Court employs a de novo standard in reviewing a lower court's grant of a summary judgment motion. Short v. Columbus Rubber & Gasket Co., Inc., 535 So.2d 61, 63 (Miss. 1988). This entails reviewing all the evidentiary matters in the record: affidavits, depositions, admissions, interrogatories, etc. The evidence must be viewed in the light most favorable to Sessoms, the non-moving party, and Sessoms is to be given the benefit of every reasonable doubt. Smith v. Sanders, 485 So.2d 1051, 1054 (Miss. 1986); Dennis v. Searle, 457 So.2d 941, 944 (Miss. 1984). A motion for summary judgment lies only when there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. M.R.C.P. 56(c). This Court does not try issues on a Rule 56 motion, but only determines whether there are issues to be tried. Mississippi Insurance Guaranty Association v. Byars, 614 So.2d 959 (Miss. 1993).
Sessoms argues that Allstate's actions in handling her claim rose to the level of a bad faith breach of contract. She bases her allegation on three theories: 1) Allstate's failure to communicate with Sessoms concerning her claim and Allstate's failure to supply information involving the accident, which would aid *519 in initiating a negligence suit against Jessie White, another Allstate insured; 2) Allstate's refusal to pay the full policy limits for Sessoms's medical expenses; and 3) Allstate's failure to waive the collision deductible on the Sessoms policy.
According to Sessoms, Allstate had a duty to investigate the accident and give her, as an insured, an honest response as to the outcome of the company's evaluation of the accident. Sessoms argues that after a claims representative told her the accident involved another Allstate insured vehicle, Allstate severed all communications with her. Neither phone calls nor letters were answered. Counsel for Sessoms introduced several letters into the record that he claims to have sent Allstate, all of which were unanswered by Allstate. These letters were not found in the Sessoms file furnished by Allstate during discovery. Sessoms also claims that Allstate breached its duty to her when Allstate would not turn over information concerning the accident in order for her to pursue a claim against Jessie White, the other Allstate insured driver.

Allstate's duty to its insured
Our case law states that bad faith does not exist if an insurance company can give the insured a legitimate or arguable reason for denying a claim. See Pioneer Life Ins. Co. of Illinois v. Moss, 513 So.2d 927, 929 (Miss. 1987). In an action for breach of contract, punitive damages are appropriate only where the breach is attended by intentional wrong, insult, abuse or such gross negligence as to consist of an independent tort. Independent Life & Acc. Ins. Co. v. Peavy, 528 So.2d 1112, 1115 (Miss. 1988); Fedders Corp. v. Boatright, 493 So.2d 301, 311 (Miss. 1986); Progressive Cas. Ins. Co. v. Keys, 317 So.2d 396, 398 (Miss. 1975). Punitive damages are only appropriate when the insurer has acted with malice or gross negligence or reckless disregard for the insured's rights. Independent Life & Acc. Ins. Co., 528 So.2d at 1115; Aetna Cas. & Sur. Co. v. Day, 487 So.2d 830 (Miss. 1986). A clerical error or honest mistake does not give rise to punitive damages. Andrew Jackson Life Ins. Co. v. Williams, 566 So.2d 1172, 1187 (Miss. 1990); Weems v. American Sec. Ins. Co., 486 So.2d 1222, 1227 (Miss. 1986); Consolidated American Life Ins. Co. v. Toche, 410 So.2d 1303, 1306 (Miss. 1982).
It is clear that the relationship between an insurance company and its insured is contractual in nature, with the rights and duties set out by the provisions of the insurance policy. Cauthen v. National Banks Life Ins. Co., 228 Miss. 411, 88 So.2d 103 (1956). Like all other contracts, insurance policies which are clear and unambiguous are to be enforced according to their terms as written. Davidson v. State Farm Fire & Cas. Co., 641 F. Supp. 503 (N.D.Mass. 1986); Aero International v. United States Fire Ins. Co., 713 F.2d 1106 (5th Cir.1983). According to Sessoms's insurance policy, Allstate's two duties toward its insured included the duty to defend Sessoms if sued and the duty to pay any damages caused by Sessoms's operation of a vehicle. Allstate fulfilled these obligations when it settled Bellinger's claim against Sessoms for $9,000 and they paid $1,962.83 to cover Sessoms's medical expenses. In return for these payments, Sessoms executed a release to Allstate. Sessoms's insurance policy is silent about any kind of disclosure requirements that might assist an insured who desires to sue a third party.
The duty of an insurer to an insured arising out of a first-party insurance claim is different from that arising out of a third-party claim. Davidson, 641 F. Supp. at 513. In distinguishing between a first-party policy claim and a third-party liability claim, the federal district court stated:
`[T]he dilemma presented by the absolute control of trial and settlement vested in the insurer by the insurance contract and the conflicting interests of the insurer and the insured' in the third-party claim requires that the insurer recognize the conflict and give due regard to the interests of the insured. This dilemma is lacking in the first-party claim. The insurer is not in a position to expose the insured to a judgment in excess of the policy limits through its unreasonable refusal to settle a case, nor is it in a position to otherwise injure the insured by virtue of exclusive control over the defense of the case.
*520 Davidson, 641 F. Supp. at 513 (quoting Lawton v. Great Southwest Fire Ins. Co., 118 N.H. 607, 392 A.2d 576, 580-81 (1978)). In the present case, Sessoms is not making a first-party claim under her policy, but is trying to force Allstate to help her in a third-party claim against White.
The case of Jordan v. State Farm Mut. Auto. Ins. Co., 774 F. Supp. 424 (S.D.Miss. 1991), involved a similar set of facts wherein the two vehicles involved in the accident were both insured by State Farm Insurance Company. Following a $33,000 jury verdict in his favor, Jordan brought suit against State Farm alleging that State Farm owed him a duty as its insured to properly investigate the accident. Jordan claimed that had State Farm properly investigated the accident, it would have realized its insured was at fault and promptly paid his claim as opposed to going to trial. However, the District Court did not agree with Jordan, and stated:
Plaintiff's claim, regardless of how he chooses to characterize it, is that State Farm owed him a duty as its insured to properly investigate the accident, which duty it breached, resulting in State Farm's denial of Jordan's claim for recovery under Hood's liability policy. Such an action is clearly not permitted under Mississippi law. First, any duty that State Farm may have owed Jordan, as its insured, to conduct an adequate investigation of the accident must necessarily derive from plaintiff's own policy with State Farm. Since Jordan acknowledges that the claims he made under his policy were paid by State Farm without delay, any failure by State Farm to adequately investigate the circumstances of the accident did not result in a failure to pay benefits under plaintiff's policy. To the extent that Jordan complains of State Farm's refusal to pay benefits under Hood's liability policy, the action is properly considered a direct action against State Farm which is not attainable under Mississippi Law.
Id. at 425-26.
Although Allstate initially denied liability in the present case, it later determined that both Sessoms and White were each 50% liable. From that point on Allstate never denied the claim. Any failure to investigate the accident or correspond with Sessoms did not result in any nonpayment of policy benefits. Allstate paid all of the claims under the Sessoms policy and has therefore lived up to its end of the bargain. To impose an additional duty would, in effect, be rewriting the insurance contract.
Sessoms filed a motion with the lower court to compel Allstate to comply with her discovery requests, seeking both the entire Sessoms file as well as White's file. Allstate had previously sent the Sessoms's attorney a ninety-three page copy of the Sessoms file, which Sessoms claims to be incomplete. In an attempt to show that the file was incomplete, Sessoms's attorney presented testimony from Peter Joseph Quave, a proposed expert in the area of insurance claims, who testified that several pertinent aspects of the file were missing. According to Quave, the file had a gap in its transactional history. Also, no evidence could be found of any reserve being set up prior to the payment of any claim, which he stated is a customary procedure in settling claims. Quave stated that there was a gap in the diary sheets where the supervisor usually adds his own comments in areas left open between the claims representative's entries. Next, there was no request for authority in the file, which usually indicates the claims representative's valuation of the claim as well as the basis for this opinion. Finally, Quave stated that the only photos found in the Sessoms file were of Sessoms's vehicle, and not any others involved in the accident.
Sessoms argues that none of the letters which she sent to Allstate requesting information concerning her claim, as well as seeking information concerning White, were present in the file which Allstate supplied. Nor was there any information concerning the actual cash value of the Sessoms vehicle, any record of offers or negotiations with Sessoms, or any records of payments regarding property damage to White's vehicle.
At this hearing, the lower court judge issued an order requiring that Allstate allow Sessoms's attorney and Quave to inspect the original Sessoms file at the offices of Allstate's attorneys in Jackson. The trial judge *521 also ordered Allstate to allow Sessoms's attorney access to its operations manual pertaining to the settling of claims. Allstate, however, was allowed to withhold any documents that it felt constituted mental impressions, material produced in the anticipation of litigation, privileged material, and material deemed prejudicial to White. These withheld materials, as well as a copy of White's claim file and that of Sally Gray, Sessoms's initial attorney in this action, would be submitted to the court for in camera inspection. Allstate initially hired Sally Gray to represent Sessoms when it became apparent that a conflict of interest might result between Allstate and its insureds. Gray has since withdrawn from representing Sessoms. Since the record is silent as to the events of the in camera inspection, we are left in the dark concerning the trial judge's findings. Medical payments to Brenda Sessoms
Sessoms argues that Allstate acted in bad faith when it failed to pay the entire policy limits. Allstate made payments totalling $1,962.83 on behalf of Brenda Sessoms for medical bills she submitted. However, since Allstate did not pay the remaining $37.17 of the $2,000 policy limit, Sessoms claims Allstate acted in bad faith. Allstate, on the other hand, maintains that it was willing to pay the remaining $37.17 within the policy limits but that Sessoms never requested that it be paid.
Bob Hodges, an Allstate claims representative, sent Sessoms a letter dated May 20, 1987, outlining the payments that Allstate had made on Sessoms's behalf and stated that $37.17 remained under the policy's medical coverage. This letter acknowledging the remaining $37.17 coverage does not show Allstate's intention of denying Sessoms her remaining coverage under the policy limits. Sessoms's attorney admitted that a formal request was never made for the additional monies, but claims to have forwarded additional bills following the receipt of the May 20 letter. Nothing could be found in the record to confirm Sessoms's attorney's assertions.
Although Sessoms's claims that Allstate's failure to pay the remaining $37.17 is a contributing factor of bad faith, throughout the record her attorney stated that the failure to pay the remainder of the policy limits was not really the basis of the appeal, but it was Allstate's failure to supply Sessoms with information relating to the accident that would aid in the third-party claim against White. Contrary to Sessoms's claim, Allstate did not place any new conditions precedent for the payment of the remaining $37.17.
We have held that when an insurance policy makes a submission of a proof of loss form a condition precedent to payment of medical payments, in the absence of waiver, punitive damages are not recoverable for failure to make medical payments where the insured failed to furnish the required medical reports and authorizations. See New Hampshire Ins. Co. v. Smith, 357 So.2d 119, 121 (Miss. 1978). In Cossitt v. Federated Guaranty Mutual Insurance Company, 541 So.2d 436 (Miss. 1989), this Court was faced with a bad faith claim in which Federated Insurance Company had not paid the policy limits on medical payments following the insured's submission of a proof of loss form due to confusion as to the amount of coverage. The insurer quoted the policy coverage as being $1,000 in medical payments coverage, while Cossitt's attorney was under the impression that the policy had $5,000 worth of medical payments coverage. This Court held that Federated Guaranty was liable to Cossitt for $1,000 upon Cossitt's supplying the insurer with a proof of loss, but could not determine whether Federated Guaranty's actions amounted to bad faith. This aspect of the case was remanded to the lower court for further development of the facts surrounding Federated Guaranty's failure to pay medical benefits. Id. at 445.
Allstate promptly paid Sessoms's medical bills when they were submitted to the company. In its letter, dated May 20, 1987, Allstate showed a willingness to pay the remaining amount of policy coverage. No conditions precedent were present which would prevent payment of the remaining $37.17. Therefore, Sessoms's claim is without merit.

Failure to waive the collision deductible
Finally, Sessoms claims that Allstate acted in bad faith when it refused to automatically *522 waive the $200 collision deductible. Sessoms argues that since the accident involved two Allstate insured vehicles, the deductible should have been waived. Like Sessoms's other arguments, we find no merit in this assertion. When Allstate refused to waive this deductible, it had a legitimate and arguable reason to support its position. See Pioneer Life Ins. Co of Illinois v. Moss, 513 So.2d 927, 929 (Miss. 1987). Section DD of the insurance policy states:
Allstate will pay for loss to your insured auto or a non-owned auto (including insured loss to an attached trailer) from a collision with another object or by upset of that auto or trailer. The deductible amount will not be subtracted from the loss payment in collisions involving your insured auto and another auto insured by us.

The legitimate and arguable reason for which Allstate was able to deny waiving the collision deductible was that the policy language required the other insured auto be involved in the accident. The jury found that White was not at fault for the accident. The White car was not struck. It follows that there is at least an arguable basis for the contention that the White car was not involved in the accident within the meaning of the policy.

III.

Should Sessoms be entitled to a new trial?
As this Court has clearly stated in the case of Fitzner Pontiac-Buick-Cadillac v. Smith, 523 So.2d 324 (Miss. 1988),
Our scope of review in such contexts is as limited as it is familiar. We consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, we are required to reverse and render. On the other hand, if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required. See, e.g., Rester v. Morrow, 491 So.2d 204, 211-12 (Miss. 1986); Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652, 657 (Miss. 1975).
Id. at 326.
Sessoms is also appealing the jury's verdict in favor of Jessie White in her negligence suit against him, claiming that she is entitled to a new trial. Sessoms contends that she was prejudiced by not having access to the information sought from Allstate which could have been used in her suit against White. It is quite possible that if Sessoms had been given access to certain information, the outcome of the trial might have been different. However, in an attempt to bootstrap this assignment of error onto the bad faith issue, Sessoms failed to include the record from the trial against White as part of the record on appeal. The claims that Sessoms makes for a new trial against White do not cite any errors which occurred in the jury trial, but are based solely on Sessoms's action against Allstate. Since the jury verdict was the only thing included in the record of this bifurcated trial, we cannot consider this issue on appeal. Absent a record in support of an assignment, this Court need not consider the assignment. Jenkins v. State, 483 So.2d 1330 (Miss. 1986). Therefore, this Court does not consider this issue on appeal.
Sessoms had her day in court against White, and the jury ruled against her. Sessoms argues that had she been granted more access to the information in Allstate's files, she would have prevailed in her suit against White. However, Sessoms was given as much access to the Sessoms and White files in Allstate's possession that the rules of discovery would allow.
In summation, we do not find Allstate's actions constituted bad faith. Allstate lived up to its duties as set out in the insurance policy and there is no provision requiring Allstate to aid its insured in filing third-party claims. Allstate complied with the discovery orders, and the documents it held out as being privileged were viewed by the judge during an in camera inspection. Sessoms's medical bills were paid according to the policy *523 provisions with the exception of $37.17, which Sessoms was told was still available. Allstate had a legitimate and arguable reason not to waive the collision deductible. Finally, Sessoms's appeal of the unsuccessful jury verdict in the White case neither addressed any assignments of error nor included any of the record and, therefore, this Court does not consider it. We therefore affirm the lower court's award of summary judgment to Allstate.
AFFIRMED.
HAWKINS, C.J., DAN M. LEE, PRATHER, P.JJ., and BANKS, ROBERTS and SMITH, JJ., concur.
McRAE, J., dissents with separate written opinion joined by SULLIVAN, J.
McRAE, Justice, dissenting:
Because Sessoms was entitled to a waiver of her collision deductible and to inspect her complete claims file, I respectfully dissent.
By rejecting Sessoms' argument that she was entitled to a waiver of her $200.00 collision deductible, the majority is splitting hairs. The Allstate policy expressly provides for such a waiver "in collisions involving your insured auto and another auto insured by us." The majority jumps to the conclusion that "collision," as used in the policy provision means "physical contact." However, the policy, itself, does not define the term "collision" or otherwise suggest such a restrictive reading. Particularly in a multi-car accident, a vehicle pulling out of a stop sign may cause another vehicle, which has the right-of-way, to swerve in order to miss it and collide into an embankment to avoid hitting other vehicles. This does not make that vehicle any less involved in the collision. Nor does the liability policy avoid payment because of the negligence of the insured who caused the accident. Accordingly, Sessoms is entitled to a waiver of the $200.00 deductible on her collision policy.
The trial court further erred in refusing to require Allstate to provide Sessoms with all of the information relevant to the accident in which she was involved. An insurance company is a business or corporation, not an attorney. It is not licensed to practice law. Therefore, it should not be able to routinely enjoy the attorney-client privilege or to protect its records as "work product." Haynes v. Anderson, 597 So.2d 615, 620-623 (Miss. 1992) (McRae, J., concurring).
As the majority points out, a contractual relationship exists between an insurance company and its insured. The insured pays a premium in return for coverage in the event of loss or liability for another's loss. Part of that premium covers the cost of "services" provided by the insurer such as claims investigations and maintenance of files. Claims files are business records maintained for and on behalf of the insured. Thus, the insured, having paid for these services, is entitled to know what is in his files and to have access to that information. Further, the insured should have access to his complete file, without any selective editing or removal of documents by the insurer.[1]
Insurance companies are engaged in the business of selling insurance and servicing customer claims. Insurance claims files, unlike medical records, are not privileged. Only the legislature has the power to bestow the privilege of confidence on records or communications. It has not chosen to extend that privilege to insurance companies. Their files are merely business records. Moreover, an insurer is not an attorney or in the business of practicing law. Communications between an insurer and its insured, therefore, may not be shielded by the veil of confidentiality that covers an attorney and his client as well as the work product of that relationship. See Haynes, 597 So.2d at 621-623.
For these reasons, the case should be reversed and remanded for a new trial. As discussed more fully in my concurring opinion in Haynes, the circuit court should be directed to order Allstate to turn over the relevant records to Sessoms. Accordingly, I dissent.
SULLIVAN, J., joins this opinion.
NOTES
[1] Peter Quave, an expert in the area of insurance claims, testified that there were gaps in the Sessoms and White files, resulting in the exclusion of pertinent information.