# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 94-CA-00669-SCT

*DAVID L. MURPHREE*

*v.*

*FEDERAL INSURANCE COMPANY AND INSTITUTE*
*FOR TECHNOLOGY DEVELOPMENT, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/05/94 |
| TRIAL JUDGE: | HON. JOHN M. MONTGOMERY |
| COURT FROM WHICH APPEALED: | OKTIBBEHA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WILLIAM C. WALKER, JR. |
| ATTORNEYS FOR APPELLEES: | RALPH E. ROOD |
| | DAVID M. LEONARD |
| | NEVILLE H. BOSCHERT |
| | RICKY G. LUKE |
| | WHITNEY B. BYARS |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 4/10/97 |
| MOTION FOR REHEARING FILED: | 4/24/97 |
| MANDATE ISSUED: | 4/2/98 |

**EN BANC.**

**ROBERTS, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. This case comes before this Court as an appeal from a grant of summary judgment in favor of Institute for Technology Development, Inc. (ITD) and Federal Insurance Company (Federal) in a civil action filed by the appellant David L. Murphree ("Murphree") for bad faith and punitive damages regarding their failure to timely pay attorney's fees incurred in the federal criminal proceeding against Murphree.

¶2. On February 3, 1993, Murphree filed his complaint against the appellees, ITD and Federal,

alleging that both had committed bad faith by refusing to honor their contractual obligations to provide funds for legal expenses and fees incurred in Murphree's defense. Federal and ITD both answered denying their liability for bad faith breach of contract. At the completion of discovery, separate motions for summary judgment were filed by ITD and Federal, to which Murphree responded. On March 4, 1994, a hearing was had on the motions, and on July 5, 1994, the trial judge granted both ITD's and Federal's motions for summary judgment.

¶3. It is from these grants of summary judgment that the aggrieved Murphree has filed his appeal and brings the matter before this Court contending:

**THE TRIAL COURT ERRED IN GRANTING THE MOTIONS FOR SUMMARY JUDGMENT IN FAVOR OF ITD AND FEDERAL INSURANCE COMPANY IN LIGHT OF THE GENUINE ISSUES OF MATERIAL FACT IN THE RECORD.**

## STATEMENT OF THE FACTS

¶4. Murphree, a former officer and director of ITD, was indicted February 12, 1991, in the United States District Court for the Southern District of Mississippi. The indictment contained fifteen counts, each of which alleged that Murphree "did knowingly and willfully embezzle, steal, purloin, and convert for his own use" various sums of money of the United States and departments and agencies of the United States, in violation of 18 U.S.C. § 641. A demand was made by Murphree on ITD for an advancement of attorney's fees and expenses incurred in the defense of the federal criminal charges against him. Murphree claimed he was entitled to indemnification according to the charter of ITD under Article X, which is lengthy, but provides in pertinent part:

\* \* \*

(e) Advancing expenses. The corporation shall pay the expenses (including attorneys' fees and disbursements) incurred in good faith by an Indemnified Representative in advance of the final disposition of a Proceeding upon receipt of an undertaking by or on behalf of the Indemnified Representative to repay such amount if it shall ultimately be determined that such person is not entitled to be indemnified by the corporation pursuant to this Article. The financial ability of an Indemnified Representative to repay an advance shall not be a prerequisite to the making of such advance

\* \* \*

¶5. ITD consulted with its attorneys and concluded no payment could be made to Murphree for fear of violating Miss. Code Ann. § 79-11-281(2), (3) and (5) because the indictments charged embezzling for personal benefit. Miss. Code Ann. § 79-11-281 (2), (3) and (5) provide:

(2) Except as provided in subsection (3) of this section, a corporation may indemnify an individual made a party to a proceeding because he is or was a director against liability incurred in the proceeding if:

(a) He conducted himself in good faith; and

(b) He in good faith believed:

(i) In the case of conduct in his official capacity with the corporation that his conduct was in its best interests; and

(ii) In all other cases, that his conduct was at least not opposed to its best interests; and

(c) In the case of any criminal proceeding, he had no reasonable cause to believe his conduct was unlawful.

A director's conduct with respect to an employee benefit plan for a purpose he reasonably believed to be in the interests of the participants in and beneficiaries of the plan is conduct that satisfies the requirement of subsection (2)(b)(ii) of this section.

The termination of a proceeding by judgment, order, settlement or conviction is not, of itself, determinative that the director did not meet the standard of conduct described in this section.

(3) A corporation may not indemnify a director under this section:

(a) In connection with a proceeding by or in the right of the corporation in which the director was adjudged liable to the corporation; or

(b) In connection with any other proceeding charging improper personal benefit to him, whether or not involving action in his official capacity, in which he was adjudged liable on the basis that personal benefit was improperly received by him.

Indemnification permitted under this section in connection with a proceeding by or in the right of the corporation is limited to reasonable expenses incurred in connection with the proceeding.

(5) A corporation may pay for or reimburse the reasonable expenses incurred by a director who is a party to a proceeding in advance of final disposition of the proceeding if:

(a) The director furnishes the corporation a written statement of his good faith belief that he has met the standard of conduct described in subsection (2) of this section;

(b) The director furnishes the corporation a written undertaking, executed personally or on his behalf, to repay the advance if it is ultimately determined that he did not meet the standard of conduct; and

(c) A determination is made that the facts then known to those making the determination would not preclude indemnification under Sections 79-11-101 et seq.

The undertaking required by subsection (5)(b) of this section shall be an unlimited general obligation of the director but need not be secured and may be accepted without reference to financial ability to make repayment.

Determinations and authorizations of payment under this section shall be made in the manner specified in subsection (7) of this section.

¶6. The federal investigators revealed documents to Leonard Vernamonti, president and CEO of

ITD, which indicated Murphree misappropriated funds for his personal benefit. The record is void of any other research or investigation conducted by ITD to determine the culpability of Murphree. At the time of the denial by ITD, Federal had not received any information from ITD or Murphree with regard to payment of attorney's fees.

¶7. The United States dismissed the indictments against Murphree without prejudice on April 23, 1991. On May 7, 1991, the board of directors of ITD considered George L. Lucas' (Murphree's then attorney) request for payment of attorney's fees. That request was denied. Then on June 20, 1991, the United States indicted Murphree on three counts of "intentionally misapplying and knowingly embezzling, by fraud or otherwise without authority converting to the use of persons other than the rightful owner, monies in excess of $5,000," these monies having been in the care, custody and control of ITD, all in violation of 18 U.S.C. § 666 (a) (1) (A). Whereupon, demand was made on ITD for the advancement of attorney's fees. ITD again refused, referring to the same Miss. Code sections as before.

¶8. Federal was first notified of Murphree's indictments in October of 1991, when Murphree submitted a claim to Federal for the payment of attorney's fees. Federal contacted ITD and determined that ITD had not indemnified or agreed to indemnify Murphree for these expenses and costs arising out of these claims of embezzlement, fraud, and wrongful conversion. The policy coverage provided by Federal to ITD was set forth in two clauses as follows:

> 1. <u>Insuring Clause 1</u> dealt with those claims against ITD officers and directors for which the officer or director "is not indemnified by ITD."[1]
>
> 2. <u>Insuring Clause 2</u> dealt with those claims against ITD officers and directors for which ITD "grants indemnification."[2]

¶9. Since ITD had not indemnified or agreed to indemnify Murphree, Federal reviewed the claim under Insuring Clause 1 of the policy. This clause contained an exclusion that specifically addressed the Insured Person having allegedly gained an improper personal profit or advantage:

> 3.2 The Company shall not be liable under Insuring Clause 1 to make any payment for Loss in connection with **claim(s)** made against any of the Insured Person(s):
>
> * * *
>
> (e) based upon or attributable to such Insured Person having gained any personal profit or advantage to which he was not legally entitled **regardless of whether or not (1) a judgment or other final adjudication adverse to such Insured Person establishes that such personal profit or other advantage to which he was not entitled**, or (2) the Insured Person has entered into a settlement agreement to repay such unentitled personal profit or advantage to the Insured Organization.

(emphasis added).

¶10. Because the indictments against Murphree charged embezzlement for personal profit or advantage, Federal construed the above language to require a denial of payment to Murphree.

Federal claimed that the validity of the allegations were immaterial since it was the allegations themselves that determined whether Exclusion 3.2 (e) applied. A letter was sent on November 22, 1991, in which Federal denied this claim for attorney's fees based on Exclusion 3.2 (e). Federal indicated that the finality of this decision was contingent on the discovery of additional facts. Despite this contention, Federal did not conduct an investigation to seek any additional facts.

¶11. On June 22, 1992, after the Government had rested, Murphree moved the federal court to enter a judgment of acquittal on all counts of the indictments. Subsequent to arguments from both sides, a judgment for acquittal was granted by the trial judge. Murphree's attorney made demand on ITD on June 25, 1992, after the judgment was entered into the record. ITD claimed that it had notified its insurer, Federal, of its intent to discharge any and all liability of ITD regarding the matter. Federal states that it did not receive notice of Murphree's acquittal until July 7, 1992, when Murphree's own attorney sent a copy of the acquittal along with the documentation of the attorney's fees and expenses. Upon receipt of this documentation, Federal conferred with ITD and determined that ITD was, in fact, willing to grant indemnification to Murphree for the fees and expenses incurred in defending against both sets of indictments.

¶12. Federal states that when ITD decided to grant indemnification to Murphree that Federal had to view the claim under Insuring Clause 2. This clause provides that the insurer shall pay for losses incurred for which the insured organization (ITD) grants indemnification. Murphree claims that this grant was made by ITD in its by-laws and charter prior to the acquittal. ITD contends that the grant could not have been made before acquittal without violating Miss. Code Ann. § 79-11-281 (2), (3) and (5). After Murphree's acquittal, Federal began to review the material that had been submitted regarding the amount of the attorney's fees. Charles Yoste, who was at that time Murphree's attorney, made another demand for indemnification for fees and expenses incurred in Murphree's defense. As part of this demand Mr. Yoste stated that if payment was not timely made, a suit for bad faith delay/denial of payment would be brought against Federal. Federal sought to have a full release signed by Murphree for any claims against it for bad faith acts in delay of payment. The release was denied. Murphree contends that the release was requested in light of the refusal and/or delay in payment of the attorney's fees by Federal. Federal states that the release was sought after it received letters threatening a lawsuit by Murphree's attorney.

¶13. Between July 3, and August 13, 1992, Federal received notice from Murphree's attorney that there had been an overbilling of some $15,000. This notice was followed by a release on August 13, 1992, for the proper amount of attorney's fees--$270,817.01. The checks for full payment of the attorney's fees were delivered to Murphree's attorney on August 19, 1992, in the form of Federal's check for $220,817.01 and ITD's check for $50,000, which was the policy deductible.

¶14. Murphree filed his bad faith suit against ITD and Federal on February 3, 1993, seeking compensatory and punitive damages. He acknowledged the full payment of his attorney's fees and expenses. His cause of action was based on the failure to pay by both ITD and Federal until after Murphree was acquitted in his criminal trial. Murphree contends that his need for an advancement placed him in a position of hardship. The delay by Federal and ITD caused Murphree to cash in his state retirement in order to defend the criminal charges against him.

## DISCUSSION OF THE ISSUE

**THE TRIAL COURT ERRED IN GRANTING THE MOTIONS FOR SUMMARY JUDGMENT IN FAVOR OF ITD AND FEDERAL INSURANCE COMPANY IN LIGHT OF THE GENUINE ISSUES OF MATERIAL FACT IN THE RECORD.**

¶15. The Court employs a de novo standard of review in reviewing a lower court's grant of summary judgment motion. *Roussel v. Hutton*, 638 So. 2d 1305, 1314 (Miss. 1994); *Sessoms v. Allstate Ins. Co.*, 634 So. 2d 516, 518 (Miss. 1993). *See also Short v. Columbus Rubber & Gasket Co., Inc.*, 535 So. 2d 61, 63 (Miss. 1988). Summary judgment is appropriate if the evidence before the Court-- admissions in the pleadings, answers to interrogatories, depositions, affidavits, etc.--shows that the moving party is entitled to judgment as a matter of law. *Newell v. Hinton*, 556 So. 2d 1037, 1041 (Miss. 1990).

¶16. The evidence must be viewed in the light most favorable to the non-moving party, and he is to be given the benefit of every reasonable doubt. *Smith v. Sanders*, 485 So. 2d 1051, 1054 (Miss. 1986). By the same token, however, the non-moving party cannot just sit back and remain silent, but he must rebut by producing significant probative evidence showing that there are indeed genuine issues of material fact. *Fructure v. Lynch Oil, Co.*, 522 So. 2d 195, 198-99 (Miss. 1988). The non-movant may not simply allege a material fact in his pleadings in attempting to create an issue that will avoid an adverse rendering of summary judgment. *Sanders*, 485 So. 2d at 1054.

¶17. This Court does not try issues on a Rule 56 motion, but only determines whether there are issues to be tried. *Mississippi Ins. Guar. Assoc. v. Byars*, 614 So. 2d 959, 963 (Miss. 1993). In reaching this determination, the Court examines affidavits and other evidence to determine whether a triable issue exists, rather than the purpose of resolving that issue. Comment, Miss. R. Civ. P. 56.

¶18. In construing Miss. R. Civ. P. 56, it is appropriate for this Court to rely on federal law. *See*, *Bourn v. Tomlinson Interest, Inc.*, 456 So. 2d 747, 749 (Miss. 1984); *Brown v. Credit Ctr., Inc.*, 444 So. 2d 358, 364 n. 1 (Miss. 1983). The Fifth Circuit in *Bache v. American Telephone and Telegraph*, 840 F.2d 283 (5th Cir. 1988) stated that:

> [T]o determine which factual issues are material, we must first examine the substantive law that governs the case, and to determine if an issue of material fact is genuine, we must then decide whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Bache*, 840 F.2d at 287 (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)).

¶19. Murphree raises on appeal the question whether there were issues of material fact regarding the failure to pay prior to his acquittal his claims for attorney's fees and expenses. When the presentation of all evidence by both sides is completed, it is the trial court's function and responsibility to determine whether the insurance carrier had a reasonably arguable basis, either in fact or in law, to deny the claim. *Blue Cross & Blue Shield v. Campbell*, 466 So. 2d 833, 843 (Miss. 1984). If there is a finding that there was a reasonably arguable basis to deny the claim, then the [appellant] is not entitled to have the jury consider any bad faith award against the insurance company. *Id.*

¶20. Where an insurance carrier denies or delays payment of a valid claim, punitive damages will not lie if the carrier has a reasonable cause for such denial or delay. *Mutual Life Ins. Co. v. Estate of*

*Wesson*, 517 So. 2d 521, 528 (Miss. 1987); *Pioneer Life Ins. Co. v. Moss*, 513 So. 2d 927 (Miss. 1987); *Scott v. Transport Indem. Co.*, 513 So. 2d 889 (Miss. 1987); *Mississippi Farm Bureau Mut. Ins. Co. v. Todd*, 492 So. 2d 919 (Miss. 1986); *Banker's Life & Casualty Co. v. Crenshaw*, 483 So. 2d 254, 276 (Miss. 1986), *aff'd on other grounds*, 486 U.S. 71 (1988); *Southern United Life Ins. Co. v. First State Bank*, 481 So. 2d 764 (Miss. 1985); *Life Ins. Co. v. Veal*, 354 So. 2d 239 (Miss. 1978). Thus, where the parties dispute the existence and legitimacy of the carrier's reason for delay or denial, these issues are ones of material fact, and the plaintiff is entitled to have a jury pass upon his claim for punitive damages if reasonable minds could differ as to the legitimacy of the carrier's reason. *See Pioneer Life Ins. Co.*, 513 So. 2d 927; *State Farm Fire & Casualty Co. v. Simpson*, 477 So. 2d 242 (Miss. 1985). Determination of whether reasonable minds could differ on this issue is a question for the trial judge. *Fedders Corp. v. Boatwright*, 493 So. 2d 301 (Miss. 1986) ; *Blue Cross & Blue Shield, Inc.*, 466 So. 2d at 843; *See also* *Walker v. Brown*, 501 So. 2d 358 (Miss. 1987).

¶21. Murphree contends that the actions by ITD and Federal were sufficient to cause reasonable minds to differ regarding the legitimacy of the delay in payment. Thus, the trial court was in error when it granted the motion for summary judgment. The Court does not find the two appellees similarly situated; therefore, their arguments will be considered separately.

### A. Federal

¶**22.** Federal provided an insurance policy to ITD for indemnifying its directors and officers. Pursuant to this policy, Federal could only grant indemnification according to the enumerated guidelines. The two clauses that Federal used to analyze the claim of Murphree were stated above.

¶23. At the time Murphree made demand on Federal, ITD had not granted indemnification to Murphree. Federal, therefore, analyzed Murphree's claim under Exclusion 3.2 (e) stating that since there was an alleged claim of embezzlement for personal profit, no indemnification would be granted by Federal. Federal did not conduct a further inquiry even though it stated that indemnification would be made if additional facts were discovered. According to Murphree, this lack of investigation rises to the level of punitive damages.

¶**24.** It is true that this Court takes no pleasure in any insurance company having to pay punitive damages and such an award will be affirmed reluctantly. *Banker's Life & Cas. Co.*, 483 So. 2d at 276. However, the company owes a duty to its customer to make a reasonably prompt investigation of all relevant facts. *Id.* The customer is owed the truth after the investigation is concluded, and if there is no valid reason for denying the claim the company must promptly pay the claim. *Id.*

¶25. Here, Federal had a legitimate and arguable reason for denying the indemnification to Murphree at the time he requested it in October. As stated by this Court, there is a heavy burden to be borne by the plaintiff in demonstrating to the judge in the lower court that there was no "reasonably arguable reason" for denying the claim. *Blue Cross & Blue Shield*, 466 So. 2d at 844. If the plaintiff does not meet this burden, the trial court, must as a matter of law, remove any claim for punitive damages based on bad faith from consideration by the jury. *Id.*

¶26. If there is no arguable reason found for denying the claim, the issue of punitive damages should not automatically be submitted to the jury. This Court has stated, "[i]n the absence of an arguable

reason for denying the claim, the trial court must still determine whether there is a jury issue as to the insurer's having committed a willful or malicious wrong, or acted with gross or reckless disregard for the insured's rights." *Pioneer Life Ins. Co.*, 513 So. 2d at 930. The questions of arguable reason and malice or gross negligence are both questions of law, to be decided by the trial judge. *Id.*; *See also Life & Cas. Ins. Co. v. Bristow*, 529 So. 2d 620, 622-23 (Miss. 1988).

¶27. This Court discussed the grant of punitive damages against insurance companies in *Sessoms*:

> Punitive damages are only appropriate when the insurer has acted with malice or gross negligence or reckless disregard for the insured's rights. *Independent Life & Acc. Ins. Co.*, 528 So. 2d at 1115; *Aetna Cas. & Sur. Co. v. Day*, 487 So. 2d 830 (Miss. 1986). A clerical error or honest mistake does not give rise to punitive damages. *Andrew Jackson Life Ins. Co. v. Williams*, 566 So. 2d 1172, 1187 (Miss. 1990); *Weems v. Am. Sec. Ins. Co.*, 486 So. 2d 1222, 1227 (Miss. 1986); *Consolidated Am. Life Ins. Co. v. Toche*, 410 So. 2d 1303, 1306 (Miss. 1982).

634 So. 2d at 518. Thus, Murphree had to show that the acts by Federal constituted malice, gross negligence, or reckless disregard for his rights. Murphree argues that the failure of Federal to investigate the claims against him in the criminal proceeding gave rise to punitive damages.

¶28. This argument is without merit on two bases. First, Federal was notified by Murphree that there was a proceeding against him for embezzlement for personal benefit. Under Federal's policy (particularly Exclusion 3.2 (e)), the mere claim against Murphree alleging misappropriation for his personal benefit prohibited Federal from making payment at that time. Exclusion 3.2(e) of Insuring Clause 1 applied, unless the corporation (ITD), after reviewing the facts as it was required to do, determined that the charges were unfounded or that the officer acted in good faith and then, based on this determination, granted indemnification. Had such grant been made coverage would be determined under Insuring Clause 2, and Exclusion 3.2(e) would not apply. ITD had not granted indemnification when Murphree made demand on Federal in October. Federal had no choice but to view the demand under the Exclusion 3.2 (e), which prohibited payment.

¶29. Second, although it is well settled under Mississippi law that an insurance company has a duty to investigate promptly and adequately an insured's claim, *see*, *Banker's Life & Cas. Co.*, 483 So. 2d at 276, a plaintiff's burden in proving a claim for bad faith refusal goes beyond merely demonstrating that the investigation was negligent. As the Fifth Circuit stated in *Merchants Natl. Bank v. Southeastern Fire Ins. Co.*, 751 F.2d 771, 777 (5th Cir. 1985), the level of negligence in conducting the investigation must be such that a proper investigation by the insurer "would easily adduce evidence showing its defenses to be without merit. . ." *Szumigala v. Nationwide Mut. Ins. Co.*, 853 F.2d 274, 280 (5th Cir. 1988). Had Federal conducted an investigation, it would have simply discovered that there was, indeed, a criminal proceeding against Murphree where he was indicted for embezzling for his personal benefit. According to its policy language, Federal had a legitimate and arguable reason for denying the claim by Murphree for indemnification as was determined by the trial judge.

¶30. Murphree also argues that Federal's failure to make payment in a timely manner after being notified of his acquittal constitutes bad faith. Giving consideration to the following facts this argument is without merit. Federal received notice of Murphree's acquittal on July 7, 1992, and

conferred with ITD to determine if it was going to grant indemnification. When Federal was informed that ITD was going to indemnify Murphree, it viewed the claim under Insuring Clause 2. The documentation for the attorney's fees were, no doubt, voluminous and required detailed scrutiny as to what was a legitimate claim justifying payment. Lengthy consideration had to be given to the duplicate billing by Murphree's attorneys in the sum of $15,000. Federal made full payment to Murphree forty-four days from receiving notice of his acquittal. In light of the foregoing circumstances, this Court finds Federal's actions were reasonable and did not constitute bad faith.

¶31. This case is distinguishable from *Travelers Indem. Corp. v. Wetherbee*, 368 So. 2d 829 (Miss. 1979). In *Wetherbee*, the insurer withheld payment in order to negotiate a settlement for a sum less than the insured's claim and the policy coverage. *Id.* at 834-35. Federal made full payment of Murphree's claims less the policy deductible and the $15,000 which was over billed.

¶32. While it is true Federal did request a general release from all claims by Murphree, this did not give rise to bad faith and punitive damages. Federal's request came after it received correspondence threatening litigation if full payment was not tendered to Murphree by a certain date. In this day of rampant litigation, such a request was not unreasonable. Further, Murphree's attorneys were made aware five days after the release was requested that such release was not a condition of payment. Murphree granted a release to all attorney's fee(s) claims, and Federal made full payment within six days after the release was granted.

¶33. The trial judge made the following summation of his findings when he granted the motion for summary judgment:

> Regarding plaintiff's claims for bad faith and punitive damages relating to the alleged delays between the time of his acquittal and the ultimate payment of his attorney's fees, this Court determines as a matter of law that the undisputed facts do not support such a claim. None of the plaintiff's several attorneys corresponded with Federal Insurance Company at any time following Federal's denial letter in November of 1991, until July of 1992. At that time, bills which admittedly contained a $15,000 overcharge were submitted to Federal. Two weeks later a demand letter was sent to the attorney for ITD, and two weeks after that, another attorney acting on behalf of both ITD and Federal advised the plaintiff's attorney that the entire amount would be paid but that the parties would like a complete release. Given the threats of lawsuits contained in various letters from the plaintiff's attorneys, such a request from one lawyer to another was not unreasonable.

¶34. Given the evidence in the record, there is no genuine issue of material fact, and the trial judge correctly granted Federal's motion for summary judgment. This Court affirms the lower court's holding as to Federal.

## B. ITD

¶35. After he was first indicted, Murphree made demand on ITD for an advancement of attorney's fees pursuant to the charter of the corporation in Article X (e). Subsection (i) under Article X provides that all the rights in said article shall be deemed a contract between the corporation and the Indemnified Representative pursuant to which the corporation and each Indemnified Representative intend to be legally bound.

¶36. Upon receiving this demand from Murphree, ITD refused to honor the advancement request. ITD relied on the advice of two attorneys' interpretation of Miss. Code Ann. § 79-11-281 (2), (3) and (5). Heretofore, there has been no interpretation of this code section by this Court, which prompted ITD's argument for good faith in denying the indemnification of Murphree. This is the basis of ITD's response on appeal. ITD states that the issue should not be whether its interpretation of the statute was correct (because Murphree has been indemnified by ITD for attorney's fees and expenses), but rather whether the trial court decided correctly, as a matter of law, ITD did not act with bad faith.

¶37. Murphree relied on subsection (g) of Article X in making his argument that payment was not timely made (within 30 days) after his demand on ITD.[3] ITD would not grant indemnification because it interpreted the statute to preclude such a grant. ITD admits that Miss. Code Ann § 79-11-281 (2) and (5) allow for advancement of fees and expenses under some circumstances. But, ITD interprets § 79-11-281 (3) to preclude indemnification where the officer or director "was **adjudged liable** on the basis that personal benefit was improperly received by him." (emphasis added). Notwithstanding this correct statement of the statute, there is a major flaw in ITD's analysis. Murphree was not convicted. Therefore, he was not adjudged liable, and § 79-11-281 (3) has no application to preclude indemnification in this case.

¶38. ITD read § 79-11-281 (5) (c) to prohibit an advancement of payments to Murphree unless "[a] determination is made that the facts then known to those making the determination would not preclude indemnification under § 79-11-101 et seq." At the time the request for advance payment was made Murphree had been indicted by a federal grand jury for allegedly embezzling funds while serving as an officer and director of ITD. The federal investigators notified Leonard Vernamonti, president and CEO of ITD, of documents that led the investigators to believe that Murphree had misappropriated funds to his personal benefit. A plain reading of the statute clearly states that if the facts were valid and Murphree was convicted, then indemnification could not be made. However, upon consultation with its attorneys, ITD concluded that the mere indictment of Murphree precluded indemnification under § 79-11-281 (5) (c).

¶39. ITD's interpretation of § 79-11-281 presupposes that an indictment is equal to being "adjudged liable" (i.e. a conviction). ITD denied Murphree's request for indemnification merely because he had been indicted. The statute clearly calls for the director to be adjudged liable before indemnification can be denied. Miss. Code Ann. §79-11-281 (3). This cursory analysis shows a blatant disregard for clear legislative intent which prompted ITD to deny indemnification prior to any adjudication of Murphree's guilt or innocence. To use the advice of counsel as justification for denying a claim by Murphree which was clearly within the statute and the charter of the corporation cannot be a valid excuse. The Fifth Circuit held in *Szumigala*, 853 F.2d at 282, the following:

> [G]ood-faith reliance upon advice of counsel **may** prevent imposition of punitive damages. *See Henderson v. United States Fidelity & Guar. Co.*, 695 F.2d 109, 113 (5th Cir. 1983). But it is simply not enough for the carrier to say it relied on advice of counsel, however unfounded, and then expect that valid claims for coverage can be denied with impunity pursuant to such advice. The **advice of counsel is but one factor** to be considered in deciding whether the carrier's reason for denying a claim was arguably reasonable. We believe that where, through verbal sleight of hand, the advising attorney concocts an imagined loophole in a policy whose plain language extends coverage, such advice is heeded at the carrier's risk.

***

> We believe the difficulties inherent in temporarily denying coverage on this basis creates a **jury issue** as to whether such denial was arguably reasonable, notwithstanding advice of counsel.

(emphasis added).

¶40. The attorneys misread the plain language of the statute and wrongly instructed ITD as to whether it should grant Murphree's claim. Reading *Szumigala* together with the facts presented by Murphree on appeal, it is apparent that ITD "heeded" the attorneys' advice at its own risk. Therefore, there was an issue as to whether ITD acted in bad faith in denying the claim under Miss. Code Ann. §79-11-281.

¶41. The question becomes whether ITD's determination, under §79-11-281 (5)(c) [that the facts known to it at the time of Murphree's request precluded indemnification under § 79-11-101 et seq.], was made in good faith. The determination was made because ITD viewed Murphree's indictment as the equivalent to his being "adjudged liable." Clearly, this presents an genuine issue of material fact sufficient to withstand a motion for summary judgment.

¶42. Because the statute did not preclude payment, the charter of the corporation was the governing "law." Accordingly, ITD breached its contractual obligations to Murphree under its charter and by-laws by denying indemnification. Article X (e)[(4)], (g)[(5)], and (i)[(6)], provided Murphree with rights that ITD either ignored or refused to acknowledge when he made his demand for indemnification. The request by Murphree for advancement of attorney's fees prior to his acquittal was refused by ITD. This decision consequently precluded any payment by Federal. Further, when ITD decided to grant indemnification, payment was made fourteen days after the time period enumerated in subsection (g) of Article X. The foregoing facts constitute a breach of contractual rights as granted by subsection (i) of Article X. The materiality of such a breach is a question in which reasonable minds could differ. This is an issue of material fact that should have survived a motion for summary judgment.

¶43. ITD argues that this is a case of first impression because prior to this case there has been no judicial interpretation of Miss. Code Ann. § 79-11-281. The Mississippi Supreme Court, in cases of first impression, has refused to award punitive damages even though its ultimate decision was against the insurer. ***Gorman v. Southeastern Fidelity Ins. Co.***, 775 F.2d 655, 659 (5th Cir. 1985); *See **Gulf Guar. Life Ins. Co. v. Kelley***, 389 So. 2d 920, 922-23 (Miss. 1980). While the conclusion reached by ITD and its attorneys was not contrary to any case law ( there was none), it is not consistent with the plain language of § 79-11-281 (3) (a). Murphree was never adjudged liable. Yet ITD denied his request from its erroneous reading of an unambiguous statutory clause. Certainly ITD's motives for reading the statute could cause reasonable minds to differ concerning the issue of bad faith. Thus, an issue of material fact did exist.

¶44. Murphree argues to this Court that § 79-11-281 (11)[(7)] allowed ITD to grant greater indemnification rights than other subsections of § 79-11-281. ITD in an attempt to rebut this argument stated that there is no such provision in its bylaws, articles of incorporation, or any other resolution by which ITD could have made advance payments to Murphree based on the facts known to it at the time of Murphree's requests. However, this rebuttal is without merit. The Article X (C)(3)

and (4) exclusions, set forth in the minutes of an August 1987 meeting, prohibit ITD from making "any payment" to a director or officer if liability is based upon improper personal profit or where the indemnification would be unlawful.[(8)] In order to be liable or incur liability, Murphree would have to have been adjudged liable, not merely indicted. He was not convicted. The charges were dismissed. The indemnification would have been unlawful only if Murphree had been adjudged liable prior to a grant of indemnification by ITD. Miss. Code Ann. § 79-11-281 (3)(a). ITD simply missed the plain meaning of "liability" and "adjudged liable" in its reading of the statute and its own articles of incorporation.

¶45. ITD states if it had erroneously given advance payments to Murphree, there may have been a breach of fiduciary duties by the directors. ITD directs the Court's attention to *Petty v. Bank of New Mexico Holding Co.*, 787 P.2d 443 (N.M. 1990), where the court refused to dismiss a shareholder action brought against directors of a corporation for allowing advance payments to be made to directors to defend a suit where they were accused of improperly using corporate assets for their personal benefit. ITD fails to note that its articles of incorporation provide for situations where advancements are made and later it is determined that payment should not have been made. Article X subsection (e) provides for advancements where the indemnified party undertakes to repay such amount if it is ultimately determined that such person is not entitled to be indemnified by the corporation. By its own articles of incorporation, ITD had provided a method of making advancements without having to fear an action by shareholders. Again, ITD's failure to make a plain reading of the statute and its own articles of incorporation could lead reasonable minds to differ as to what its motivation was in denying payment to Murphree.

¶46. Murphree, as he did with Federal, brings ITD's request for a release from all claims into question as a basis for bad faith on the part of ITD. This argument was fully discussed in the above section regarding Federal. Again, a request for a release, upon which payment was not conditional, was reasonable in light of the correspondence from Murphree's attorneys threatening litigation if payment was not timely made.

## CONCLUSION

¶47. The standard with which this Court is to review a grant of summary judgment is quite clear. This Court does not try issues on a Rule 56 motion, but only determines whether there are issues to be tried. This Court holds that there were facts, when taken as a whole, that supported a motion for summary judgment for Federal but did not support a motion for summary judgment for ITD.

¶48. The actions of ITD with regard to the reading and interpretation of both Miss. Code Ann § 79-11-281 (2), (3), and (5) and its own articles of incorporation do give rise to questions that could cause reasonable minds to differ as to ITD's motives in denying indemnification. This Court is not holding these acts constituted bad faith on the part of ITD. However, the ruling of this Court is that these acts by ITD, taken as a whole, did raise an genuine issue of material fact which should have been presented to a jury. The jury should have been able to determine whether the acts of ITD constituted either bad faith in delay of payment or a breach of contract that was intentional, grossly negligent, or in reckless disregard for the rights of Murphree. If the jury had found the acts to have constituted either of these heightened torts, then punitive damages should be awarded. Again, only the jury should be able to consider the facts to determine if there was bad faith or an intentional

breach by ITD.

¶49. Federal had a legitimate and arguable reason for denying the claims of Murphree prior to his acquittal. According to its policy in Insuring Clause 1, Federal could not grant an advance of payment where the **claim** itself alleged misappropriation by the insured for personal benefit, regardless of the legitimacy of the claim. However, when ITD determined to grant indemnification subsequent to Murphree's acquittal, Federal made full payment to Murphree, less the policy deductible which was paid by ITD. Federal was able to make payment, at this point, under Insuring Clause 2 because it was determined by the corporation that indemnity could be granted to the insured. Federal was bound by the acts of ITD.

¶50. The facts of this case support a motion for summary judgment in favor of Federal but do not support a motion for summary judgment for ITD. Accordingly, the Court finds the lower court decision as to Federal was correct and should be affirmed, but reverses the grant of summary judgment in favor of ITD. Therefore, this case should be remanded for a trial consistent with the findings of this Court's opinion.

¶51. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**LEE, C.J., SULLIVAN, P.J., PITTMAN, BANKS AND SMITH, JJ., CONCUR. McRAE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. PRATHER, P.J., AND MILLS, J., NOT PARTICIPATING.**


**McRAE, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**



¶52. I agree with the majority's decision to reverse the summary judgment granted in favor of the Institute for Technology Development (ITD). However, in not also reversing the summary judgment granted to Federal Insurance Co., the majority misses the point. Because there is, indeed, a question of whether the insurer acted in bad faith by failing to timely pay the two separate claims for legal expenses and attorney fees submitted by Murphree, I dissent.

¶53. As the majority recognizes, an insurance company has a duty to investigate and make a determination *promptly* and *adequately* on each claim filed by an insured. Generally, industry standards require that an investigation and determination of coverage be made within thirty days, and if additional time is required, the insured must be notified in writing. Federal denied Murphree's October, 1991 claim within a month or two "contingent on the discovery of additional facts." However, as the majority also recognizes, *Federal did not conduct any further investigation to seek additional facts.* Had the insurer made even a cursory investigation, it would have found that the first indictment for fifteen counts of embezzlement against Murphree had been dismissed in April, 1991. Nevertheless, Federal simply made a call to ITD, determined that ITD had not indemnified Murphree for these expenses and denied his claim. Murphree separately sought an advance of attorney fees for the new June, 1991 indictment against him for three charges of misapplication of funds. Proper investigation by the insurer would have found that there also was no basis for those charges, on

which an order of acquittal subsequently was entered. Again, however, Federal merely contacted ITD and denied Murphree's claim. To have so limited its inquiry was more than negligent. ***Banker's Life & Casualty Co. v. Crenshaw***, 483 So. 2d 254, 271-273 (Miss. 1985).

¶54. Further, an insurer cannot enter into a contract with its insured and then, once a claim has been filed, require the insured to abide by additional provisions not contemplated when the agreement was made. ***Travelers Indemnity Co. v. Weatherbee***, 368 So. 2d 829, 834-835 (Miss. 1979). Specifically, Federal, in essence, acknowledged its error in delaying payment to Murphree by seeking to have him sign a release from all claims he might raise against the insurer. That was not an original condition of Federal's insurance contract. At the very least, therefore, whether Federal acted reasonably in attempting to require Murphree to sign the release is a question for a jury to decide. ***Pioneer Life Insurance Co. of Illinois v. Moss,*** 513 So. 2d 927, 930 (Miss. 1987).

¶55. Finally, we cannot deem the insurer to have acted in good faith merely because of its "reliance on the advice of counsel," in denying Murphree's claims. We have never allowed "advice of counsel" to stand as justification for committing murder or robbing a bank. By analogy, would we allow a manufacturer to hold "advice of our design engineer" as a complete bar to a products liability claim? If the best excuse an insurer can offer for delaying a valid claim is "advice of counsel," a fact issue in and of itself, we are left wondering why no claim has been filed by Federal against its attorney for failing to provide his client with proper advice.

¶56. The issue of whether Federal acted in bad faith in delaying is payment to Murphree raises a number of questions which should be resolved by a jury. Accordingly, while I agree with the majority's reversal of the summary judgment in favor of ITD, I must respectfully disagree with its disposition of the case against Federal.

1. Insuring Clause 1 provides:

> The Company shall pay on behalf of each of the **Insured Persons** all **Loss** for which the **Insured Person** is not indemnified by the **Insured Organization** and which the **Insured Person** becomes legally obliged to pay on account of any claim first made against him, individually or otherwise, during the **Policy Period** or, if exercised, during the Extended Reporting Period for a **Wrongful Act** committed, attempted, or allegedly committed or attempted, by the **Insured Person(s)** before or during the **Policy Period**. (emphasis added).

2. Insuring Clause 2 provides:

> The Company shall pay on behalf of the **Insured Organization** all **Loss** for which the **Insured Organization** grants indemnification to each **Insured Person**, as permitted or required by law, which the **Insured Person** has become legally obligated to pay on account of any claim first made against him, individually or otherwise, during the **Policy Period** or, if exercised, during the Extended Reporting Period for a **Wrongful Act** committed, attempted, or allegedly committed or attempted, by the **Insured Person(s)** before or during the **Policy Period**.

(emphasis added).

3. (g). Payment of Indemnification. An Indemnified Representative shall be entitled to indemnification within 30 days after a written request for indemnification has been delivered to the secretary of the corporation.

4. (e) Advancing Expenses. The corporation shall pay the expenses (including attorneys' fees and disbursements) incurred in good faith by an Indemnified Representative in advance of the final disposition of a Proceeding upon receipt of an undertaking by or on behalf of the Indemnified Representative to repay such amount if it shall ultimately be determined that such person is not entitled to be indemnified by the corporation pursuant to this Article. The financial ability of an Indemnified Representative to repay an advance shall not be a prerequisite to the making of such advance.

5. (g) Payment of Indemnification. An Indemnified Representative shall be entitled to indemnification within 30 days after a written request for indemnification has been delivered to the secretary of the corporation.

6. (i) Contract Rights; Amendment or Repeal. All rights under this Article shall be deemed a contract between the corporation and the Indemnified Representative pursuant to which the corporation and each Indemnified Representative intend to be legally bound. Any repeal, amendment or modification hereof shall be prospective only as to conduct of an Indemnified Representative occurring thereafter, and shall not affect any rights or obligations then existing.

7. (11) Any corporation shall have power to make any further indemnity, including advance of expenses, to and to enter into contracts of indemnity with any director, officer, employee or agent that may be authorized by the articles of incorporation or any bylaw made by the members (or if there are no members, by the board of directors) or any resolution adopted, before or after the event, by the members (or if there are no members, by the board of directors), except an indemnity against his failure to act in accordance with the standard of conduct provided in Sections 79-11-267 and 79-11-275, as applicable. Unless the articles of incorporation, or any such bylaw or resolution provide otherwise, any determination as to any further indemnity shall be made in accordance with subsection (7)(a) of this section. Each such indemnity may continue as to a person who has ceased to have the capacity referred to above and may inure to the benefit of the heirs, executors and administrators of such a person.

8. (C) Exclusions. The corporation shall not be liable under this Article to make any payment in connection with any Liability incurred by an Indemnified Representative:

***

(3) To the extent such Liability is determined to be based upon or attributable to the Indemnified Representative gaining any personal pecuniary profit to which such Indemnified Representative was not legally entitled or

(4) To the extent such indemnification has been determined to be unlawful.