**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 1999-CT-01857-SCT**

*LIBERTY MUTUAL INSURANCE COMPANY*

*v.*

*JAMES McKNEELY*

<u>**ON WRIT OF CERTIORARI**</u>

| | |
|---|---|
| DATE OF JUDGMENT: | 8/31/1999 |
| TRIAL JUDGE: | HON. FRANK G. VOLLOR |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | LAWRENCE D. WADE |
| ATTORNEY FOR APPELLEE: | PAUL KELLY LOYACONO |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | REVERSED AND RENDERED - 11/20/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**PITTMAN, CHIEF JUSTICE, FOR THE COURT:**

¶1.     James McKneely injured his back while working in Warren County in March of 1994. Anderson Tully, his employer, and Liberty Mutual Insurance Company, its workers' compensation insurer, paid temporary total disability benefits for approximately six months. After receiving a report from McKneely's treating physician who stated that McKneely had reached maximum medical recovery and that in the doctor's opinion, the conditions McKneely was still suffering from were not causally related to his workplace injury, Liberty Mutual

terminated the workers' compensation benefits. McKneely eventually prevailed in his workers compensation claim and was awarded temporary total disability benefits through 1998.

¶2.    McKneely filed a bad faith lawsuit against Liberty Mutual in 1996.  He alleged that there was no arguable basis for Liberty Mutual's decision to terminate benefits and to continue to deny payment until ordered to do so by the Mississippi Workers' Compensation Commission.  The case was tried without a jury by the Warren County Circuit Court.  The trial court found for McKneely and awarded $150,000 in actual damages and $200,000 in punitive damages.

¶3.    Liberty Mutual's appeal was assigned to the Court of Appeals which affirmed by a vote of 7-3.  *Liberty Mut. Ins. Co. v. McKneely,* No. 1999-CA-01857-COA (Miss. Ct. App. Apr. 17, 2001).  Liberty Mutual filed a petition for writ of certiorari which was granted by this Court.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶4.    In May of 1994, James McKneely hurt his back while lifting and moving stacks of lumber at an Anderson Tully facility in Warren County.  Except for a short period when he attempted to return to work, McKneely was temporarily and totally disabled from May until December of 1994.  On December 20, 1994, Liberty Mutual and Anderson Tully determined that workers' compensation benefits were no longer due, and workers' compensation payments to McKneely were terminated the following month.  The employer and the insurer based that decision primarily on the report of Dr. Wallace Weatherly, an orthopedic surgeon and McKneely's primary physician.  Dr. Weatherly had treated McKneely for several months and had ordered extensive tests including x-rays and an MRI which showed no musculoskeletal

2

injury. In November of 1994, Dr. Weatherly sent a report to the insurer in which he stated in relevant part:

> Mr. McKneely's current diagnosis, as far as I am concerned, is neck pain of unknown etiology. Mr. McKneely has been labeled with the diagnosis of fibromyalgia by Dr. Hensarling.
>
> Mr. McKneely is to follow up with Dr. Hensarling, as I have referred him to Dr. Hensarling.
>
> **I do not feel that Mr. McKneely's current problem is related to his injury which was sustained after pulling heavy lumber. I, in no way, see a relationship between fibromyalgia and pulling of lumber.**
>
> Mr. McKneely will be treated by Dr. Hensarling but I suspect he will need some sort of work hardening program. He will need some psychiatric counseling to see if there is something going on that might be psychosomatic, as I cannot find anything organic wrong with him at this time.
>
> **As far as I am concerned, Mr. McKneely has reached maximum medical improved [sic] as far as any obvious organic musculoskeletal problem, but the inorganic problems may exist**. Dr. Hensarling is to complete that workup so I will leave this statement for him to answer.

(emphasis added).

¶5.     The insurer attempted to follow up with Dr. James Hensarling. A nurse investigator working for the insurer requested a status report from Dr. Hensarling. He instructed her to review his correspondence with Dr. Weatherly. In a letter to Dr. Weatherly dated October 24, 1994, Dr. Hensarling had stated that "I feel this patient has a florid case of fibromyalgia." Significantly, Dr. Hensarling's letter to Dr. Weatherly does not relate McKneely's condition to any workplace injury. Fibromyalgia is a musculoskeletal syndrome that causes pain in the connective tissues, muscles, joints, and ligaments, as well as an assortment of other symptoms such as sleep disorders, fatigue, and depression.

3

¶6.    The insurer terminated McKneely's payments in January of 1995. It based the decision primarily on Dr. Weatherly's letter which it received in December. Eventually, the Administrative Judge and the Workers' Compensation Commission awarded temporary total benefits to McKneely. McKneely then filed a bad faith lawsuit against both Liberty Mutual and Anderson Tully. A bench trial was held in Warren County Circuit Court. Judge Vollor awarded McKneely $150,0000 in actual damages and $200,000 in punitive damages. The Mississippi Court of Appeals affirmed that decision, and the case is now before this Court on Liberty Mutual's petition for writ of certiorari.

## ANALYSIS

¶7.    Liberty Mutual asserts that the decision of the Court of Appeals is contrary to prior decisions of this Court which deal with bad faith failure to pay insurance claims and that the Court of Appeals decision misstates the evidence in several respects. Liberty Mutual claims that the judge, as the trier of fact, erred in finding that it acted in bad faith in terminating McKneely's temporary disability payments. It maintains that the trial judge should have ruled for Tully and Liberty Mutual. It argues that the decision to terminate payments was supported by the available medical evidence and based on the advice of its attorney.

¶8.    On appeal, the factual findings of a circuit judge sitting without a jury are treated like a chancellor's findings and are given deferential review. Those findings are safe on appeal if they are supported by substantial, credible, and reasonable evidence. *Maldonado v. Kelly*, 768 So.2d 906, 908 (Miss. 2000); *City of Jackson v. Perry*, 764 So.2d 373, 376 (Miss. 2000); *Puckett v. Stuckey*, 633 So.2d 978, 982 (Miss. 1993). Those findings of fact will not be set aside on appeal unless manifestly wrong. *Cotton v. McConnell*, 435 So.2d 683, 685 (Miss.

4

1983). In reviewing a trial judge's decision not to direct a verdict for the appellant, this Court considers the evidence produced at trial in the light most favorable to the appellee, giving the appellee the benefit of all favorable inferences that may be reasonably drawn from the evidence. *Miss. Power & Light Co. v. Cook*, 832 So.2d 474, 478 (Miss. 2002); *General Motors Acceptance Corp. v. Baymon*, 732 So.2d 262, 268 (Miss. 1999).

¶9. Liberty Mutual claims that the trial judge erred in finding that the insurer had no arguable basis for terminating benefits. In order to prevail in a bad faith claim against an insurer, the plaintiff must show that the insurer lacked an arguable or legitimate basis for denying the claim, or that the insurer committed a wilful or malicious wrong, or acted with gross and reckless disregard for the insured's rights. *State Farm Mut. Auto. Ins. Co. v. Grimes*, 722 So.2d 637, 641 (Miss. 1998) (citing *Life & Cas. Ins. Co. of Tennessee v. Bristow*, 529 So.2d 620, 622 (Miss. 1988)); *Sessoms v. Allstate Ins. Co.*, 634 So.2d 516, 519 (Miss. 1994); *Mut. Life Ins. Co. v. Estate of Wesson*, 517 So.2d 521, 527 (Miss. 1987). The fact that an insurer's decision to deny benefits may ultimately turn out to be incorrect does not in and of itself warrant an award of punitive damages if the decision was reached in good faith. *Grimes*, 722 So.2d at 641. Where an insurance carrier denies or delays payment of a valid claim, punitive damages will not lie if the carrier has a reasonable cause for such denial or delay. *Estate of Wesson*, 517 So.2d at 528.

¶10. In arguing that it had an arguable basis for stopping workers' compensation payments, Liberty Mutual relies primarily on the diagnosis of Dr. Weatherly, an orthopedist who was McKneely's primary treating physician. Dr. Weatherly had treated McKneely since the injury

5

in March of 1994. McKneely had undergone extensive tests which revealed no musculoskeletal injury, and he had been seen by a neurologist who found no neurological problem. Dr. Weatherly stated by letter dated November 20, 1994, that McKneely had reached maximum medical improvement and that "I [Dr. Weatherly] do not feel that Mr. McKneely's current problem is related to his injury which was sustained after pulling heavy lumber. I, in no way, see a relationship between fibromyalgia and pulling of lumber."

¶11. McKneely argued that the letter was ambiguous in that Dr. Weatherly also stated that McKneely had been diagnosed with fibromyalgia and that he was still being treated by Dr. Hensarling for that condition. Dr. Weatherly's letter also notes that McKneely might still be suffering from psychosomatic or inorganic problems although the doctor does not relate those possible conditions to the workplace injury.

¶12. McKneely alleged and the trial judge eventually found that Liberty Mutual did not have an arguable basis for denying his claim. McKneely's primary contention was that the insurer did not properly investigate the case. When faced with a claim, an insurer is required to perform a prompt and adequate investigation of the circumstances surrounding the claim. *Bankers Life & Cas. Co. v. Crenshaw*, 483 So.2d 254, 276 (Miss. 1985), *aff'd on other grounds*, 486 U.S. 71, 108 S.Ct. 1645, 100 L.Ed. 2d 62 (1988). However, the plaintiff's burden in proving a claim for bad faith refusal goes beyond proving mere negligence in performing the investigation. The level of negligence in conducting the investigation must be such that a proper investigation by the insurer "would easily adduce evidence showing its defenses to be without merit." *Murphree v. Federal Ins. Co.*, 707 So.2d 523, 531 (Miss. 1997) (quoting *Szumigala v. Nationwide Mut. Ins. Co.,* 853 F.2d 274, 280 (5th Cir. 1988)).

¶13. The Court of Appeals found that "McKneely established that 'promptly' and 'adequately' are two words which were totally ignored by Liberty Mutual." *Liberty Mut. Ins. Co. v. McKneely,* ¶ 16. The trial court and the Court of Appeals found that Liberty Mutual's failure to make further inquiry with Dr. Hensarling or another independent medical expert to establish that the fibromyalgia was not work related amounted to bad faith.

¶14. Liberty Mutual maintains that it did in fact adequately investigate this claim and that there was a sufficient arguable basis for denying continued benefits. We agree. Liberty Mutual did investigate this claim. It hired Jackie Moore, a registered nurse and rehabilitation consultant, to investigate the claim and to compile the medical records. In October of 1994, Moore wrote Dr. Weatherly and Dr. Hensarling and asked each doctor to state in writing McKneely's current diagnosis and whether McKneely's current problems related to his workplace injury. Dr. Weatherly responded with the November 30, 1994, letter discussed above in which he stated that he saw no relationship between fibromyalgia and the workplace injury and that McKneely had reached maximum medical improvement. Dr. Hensarling did not directly respond to Moore's inquiry but only referred her to his previous correspondence to Dr. Weatherly dated October 24, 1994, in which he stated that his diagnosis was that McKneely had a "florid case of fibromyalgia." Notably, in that letter Dr. Hensarling does not relate the fibromyalgia to the admitted workplace injury.

¶15. McKneely argues that it was incumbent upon Liberty Mutual to seek a more definitive diagnosis from Dr. Hensarling about whether the fibromyalgia was work-related. McKneely maintains that it would be unfair to require him to hire an expert to investigate the claim. In essence, the trial court and the Court of Appeals have placed the burden on the employer and

the carrier to disprove any possibility that the claimant continued to suffer from a workplace disability. The insurer's only obligation is to perform a prompt and adequate investigation of the claim and to deal with the claimant in good faith. The claimant carries the burden of proving the compensability of his injury by a preponderance of the evidence. *Moeller v. Am. Guar. & Liab. Ins. Co.*, 707 So.2d 1062, 1073 (Miss. 1996)*; Lanterman v. Roadway Exp., Inc.*, 608 So.2d 1340, 1347 (Miss. 1992). Furthermore, in psychological injury cases (McKneely apparently thinks Liberty Mutual should have inferred the possibility of a psychological problem from Dr. Weatherly's comment's about psychosomatic injuries), the claimant's burden is higher. The claimant in those situations must produce credible evidence proving the claim by clear and convincing evidence. *Fought v. Stuart C. Irby Co.,* 523 So.2d 314, 317 (Miss. 1988). McKneely relies on Dr. Weatherly's statement that there could be inorganic or psychosomatic problems which Dr. Weatherly felt he was unable to address. It was McKneely's obligation to show the existence of any psychosomatic injuries and that the injury, whether psychological or not, was caused by his workplace accident. We note that it would not have been unduly burdensome for McKneely to ask Dr. Hensarling, his own physician, to provide a clear statement to the insurer indicating the doctor's opinion that the fibromyalgia was related to the workplace injury. McKneely made no effort to do that. The result was that the only doctor who had analyzed the relationship between the fibromyalgia and the back injury found that there was no causation.

¶16. The defendants are not required to disprove all possible allegations made by a claimant. They are simply required to perform a prompt and adequate investigation and make a reasonable, good faith decision based on that investigation. We find that, under the

8

circumstances here, Liberty Mutual's investigation was adequate and that there was an arguable basis for discontinuing benefits.

¶17. Additionally, Liberty Mutual argued at trial that the causation of fibromyalgia was disputed by medical experts and that at that time there were no known cases in which the Mississippi Workers' Compensation Commission had ordered compensation in a fibromyalgia case. Medical studies apparently still have not shown that fibromyalgia is caused by trauma such as the injury suffered by McKneely. See Gene Stephens Connolly, *Hidden Illness, Chronic Pain: the Problems of Treatment and Recognition of Fibromyalgia in the Medical Community*, 5 DePaul J. Health Care L. 111 (Summer 2002). Liberty Mutual questioned whether it was medically possible for the back injury to have caused McKneely's fibromyalgia. In *Black v. Food Lion, Inc*., 171 F.3d 308 (5th Cir. 1999), the Fifth Circuit discussed several scientific studies which had found that there was insufficient evidence that trauma causes fibromyalgia. That court held that "neither [the plaintiff's doctor] nor medical science knows the exact process that results in fibromyalgia or the factors that trigger the process. Absent these critical scientific predicates, for which there is no proof in the record, no scientifically reliable conclusion on causation can be drawn." *Id*. at 314. The absence of any consensus among the medical authorities, at least at the time of the denial of the claim, that fibromyalgia could be caused by a traumatic event weighs against a finding of bad faith. We note that the question before the Court is not whether McKneely's fibromyalgia was caused by his injury. That question was decided by the Commission and was not appealed. The question is whether Liberty Mutual had a good faith arguable basis for denying McKneely's claim for benefits. We

9

find that the medical questions surrounding the causation of fibromyalgia provided another arguable basis for the denial of further payment of this claim.

¶18. Finally, Liberty Mutual argued below that its reliance on the advice of its attorneys negated any possible finding of bad faith. During the workers' compensation proceedings, Liberty Mutual's lawyers reviewed the correspondence from Dr. Weatherly and determined that continued benefits were not warranted. The attorney also claimed that he knew of no other cases in which the Mississippi Workers' Compensation Commission had awarded compensation in a fibromyalgia case. Liberty Mutual claims that it was entitled to rely in good faith on the attorney's advice. Generally, a client's reliance upon advice of his attorney prevents a finding of bad faith and the imposition of punitive damages. *Murphree,* 707 So.2d at 533 (citing *Henderson v. United States Fid. & Guar. Co.,* 695 F.2d 109, 113 (5th Cir. 1983)). As the attorney's advice was apparently almost entirely based on Dr. Weatherly's letter as outlined above, the analysis is similar to the analysis above. We find that Liberty Mutual was entitled to rely on the attorney's reasonable interpretation of Dr. Weatherly's statement that McKneely's fibromyalgia was not related to his workplace injury.

¶19. Liberty Mutual also maintains that McKneely's action for bad faith refusal to pay insurance benefits should fail because he had an adequate remedy under Miss. Code Ann. § 71-3-17(b) (Rev. 2000) and that McKneely should have been required to exhaust that procedure. That section provides:

> if there arises a conflict in medical opinions of whether or not the claimant has reached maximum medical recovery and the claimant's benefits have terminated by the carrier, then the claimant may demand an immediate hearing before the commissioner upon five (5) days' notice to the carrier for a determination by the

commission of whether or not in fact the claimant has reached maximum recovery.

At trial, McKneely claimed damages resulting from emotional and mental distress. He claimed that after his benefits were terminated, he was financially unable to care for himself and his children and that he was humiliated in having to receive monetary assistance from friends and family. The employer and carrier argued on appeal that McKneely could have pursued immediate continuation of his temporary disability benefits but chose not to. McKneely's attorney in fact filed a petition under the statute for continued benefits after termination in January of 1995. The hearing was set for February 13, 1995, but apparently was continued at the request of counsel for the claimant who had another engagement that day. It was never rescheduled.

¶20. The dissent to the Court of Appeals opinion in this matter would have found that:

> The trial court based its award of substantial damages on a finding that McKneely 'was financially destitute, living on charity and welfare from termination on December 20, 1994, until benefits were reinstated on April 9, 1997.' Remarkably absent from the court's findings was any discussion of the fact that, during that entire period, McKneely had a completely adequate remedy--which he commenced in early 1995 then inexplicably abandoned--to seek to have his temporary total disability payments reinstated, the only prerequisite being that he have sufficient proof to persuade the Commission of his entitlement to the benefits. That failure to pursue such a readily- available remedy for a perceived wrong is inexcusable and a sufficient basis, standing alone, to deny this bad faith claim.

*Liberty Mut. Ins. Co. v. McKneely,* ¶ 41 (McMillin, C.J., dissenting).

¶21. Workers' compensation is the employee's exclusive remedy under Miss. Code Ann. § 71-3-9 (Rev. 2000). However, there is an exception to exclusivity for situations in which the employer or the employer's insurer fail to pay benefits in bad faith. *Miss. Power & Light*

11

*Co. v. Cook*, 832 So.2d at 479. We have never held that a claimant must exercise his rights under the emergency hearing provision under Section 71-3-17(b). Here, McKneely was eventually awarded benefits by the Commission. We find that the failure to seek emergency benefits weighs on McKneely's claims for emotional and mental distress damages. McKneely could have sought to mitigate his financial problems by seeking an immediate hearing. However, we find that the failure to pursue an immediate remedy under the statute does not bar a subsequent bad faith claim. McKneely had exhausted his workers' compensation procedure when he received a favorable decision from the Commission which the insurer and the employer chose not to appeal.

**CONCLUSION**

¶22. Because the findings of the Warren County Circuit Court are clearly erroneous, we reverse the judgments of both it and the Court of Appeals and render judgment in favor of Liberty Mutual Insurance Company. In employing an investigative nurse who compiled McKneely's medical records and sought a definitive diagnosis from his treating physicians, Liberty Mutual and Anderson Tully performed an adequate investigation of McKneely's claim for benefits. The investigation revealed that the employer and its insurer had a good faith basis for discontinuing McKneely's benefits. Prior to the termination of benefits, McKneely's treating physician had stated his opinion that McKneely's fibromyalgia was not related to the workplace injury. While the claimant continued to suffer from possible psychosomatic or organic problems, nothing in the medical records at the time of termination of benefits related those conditions to the workplace injury. Liberty Mutual was entitled to rely on Dr. Weatherly's report in deciding to terminate the claimant's benefits.

¶23. **REVERSED AND RENDERED.**

**SMITH, P.J., WALLER, COBB AND CARLSON, JJ., CONCUR. EASLEY AND GRAVES, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY EASLEY, J. DIAZ, J., NOT PARTICIPATING.**

**McRAE, PRESIDING JUSTICE, DISSENTING:**

¶24. The majority erroneously finds that the claims against Liberty Mutual for bad faith denial of workers' compensation benefits are without merit and must fail because that finding is not supported by the law or evidence. The majority "skirts around" the fact that on appeal the findings of a circuit court judge, sitting without a jury, will not be overturned unless manifestly wrong and not supported by substantial, credible evidence. *Maldonado v. Kelly*, 768 So.2d 906, 908 (Miss. 2000); *Cotton v. McConnell*, 435 So.2d 683, 685 (Miss. 1983). The circuit court's findings are not manifestly wrong and are supported by substantial, credible evidence. The judgment of the Court of Appeals should be affirmed as it accurately states the law and facts which support a finding that indeed Liberty Mutual did deny workers' compensation benefits to McKneely in bad faith. For these reasons, I dissent.

¶25. The majority opines that a bad faith action against a workers' compensation insurer may not lie unless the claimant proves that the injuries for which he was denied benefits were in fact work-related injuries. That determination has already been made in the affirmative, despite the majority's attempt to justify the uncertainty that fibromyalgia is caused by a physical muscle injury. The Workers' Compensation Commission has already determined that such benefits were owing to McKneely, and its findings were never appealed by Liberty Mutual. However, the applicable law regarding bad faith actions is not premised on the proof

13

and procedures required for the attainment of workers' compensation benefits, but rather upon the duty of an "insurance company to promptly and adequately investigate all of the relevant facts involved in an insured's claim" before denying the requested benefits. *Szumigala v. Nationwide Mut. Ins. Co.*, 853 F.2d 274, 280 (5th Cir. 1988). *See also Bankers Life & Cas. Co. v. Crenshaw*, 483 So.3d 254, 276 (Miss. 1985), *aff'd on other grounds*, 486 U.S. 71, 108 S.Ct. 1645, 100 L.Ed.2d 62 (1988). As stated by the Court of Appeals, "[i]n order for McKneely to meet his burden of proving a bad faith claim he must show that the level of negligence was such that if a proper investigation had been conducted, it would easily reveal evidence that demonstrated that Liberty Mutual's defenses are without merit." *Liberty Mut. Ins. Co. v. McKneely*, No. 1999-CA-01857-COA, ¶ 16 (Miss. Ct. App. Apr. 17, 2001) (citing *Murphree v. Federal Ins. Co.*, 707 So.2d 523, 531 (Miss. 1997). *See also Bankers Life & Cas.*, 483 So.3d at 276. The majority applies the wrong standard and simply finds that McKneely must prove he was eligible for benefits. However, as already stated this was answered in the affirmative by the Workers' Compensation Commission and never was appealed by Liberty Mutual. Thus, such benefits were "improperly" denied. The standard regarding "bad faith" denial of benefits does not address whether the denial was "proper," but rather whether the insurance company conducted a "prompt" and "adequate" investigation before denying benefits.

¶26. Looking to the facts presented, not only was McKneely entitled to the benefits as already adjudicated by the Workers' Compensation Commission, but Liberty Mutual failed to conduct any investigation before denying him benefits. It denied benefits after simply looking at the language of one physician's letter and not even the physician treating McKneely's

14

fibromyalgia. Liberty Mutual's entire defense centers around "excerpts" from the letter of Dr. Weatherly to Liberty Mutual regarding the condition and treatment of McKneely. Dr. Weatherly was not even McKneely's treating physician regarding the fibromyalgia. Furthermore, Liberty Mutual fails to account for the full language of the letter which immediately put Liberty Mutual on notice that further investigation was necessary. Liberty Mutual merely suggests that "excerpts" contained in the letter support its denial of benefits and that, therefore, no further investigation or inquiry was necessary.

¶27.    The portions of the letter which obviously put Liberty Mutual on notice that further inquiry was needed include the following statements:

> Mr McKneely had been labeled with the diagnosis of fibromyalgia by Dr. Hensarling. Mr. McKneely is to follow up with Dr. Hensarling as I have referred him to Dr. Hensarling. . . . Mr. McKneely will be treated by Dr. Hensarling. . . . Dr. Hensarling is to complete the workup so I will leave this statement for him to answer.

These statements made by Dr. Weatherly were not considered by Liberty Mutual when making its decision to terminate benefits. In fact, Liberty Mutual did not even contact Dr. Hensarling to inquire as to what course of treatment he had prescribed McKneely or what exact diagnosis he had determined. Liberty Mutual did not contact Dr. Hensarling at all. Clearly, the words employed in Dr. Weatherly's letter put Liberty Mutual on notice that further inquiry was necessary. As found by the Court of Appeals, there can be little doubt that Liberty Mutual did not investigate "promptly" or "adequately." *Liberty Mut. Ins. Co.*, ¶ 16.

¶28.    Both the majority and Liberty Mutual misconstrue the burden of proof required to prove bad faith denial of payment of insurance benefits. Both suggest that Liberty Mutual was not required to "investigate" to the extent of proving McKneely's case for him. The problem with

15

this analysis is that it ignores the applicable standard and burden for bad faith claims. The standard for bad faith claims which requires "prompt and adequate" investigation does not suggest that Liberty Mutual should prove McKneely's workers' compensation case for him. Instead, it requires Liberty Mutual to investigate before denying benefits. This case would be an entirely different story if before denying benefits Liberty Mutual had contacted Dr. Hensarling and made inquiry into his diagnosis, the factual and medical reasoning to support such a diagnosis, and prescribed treatment.

¶29. Also misleading is Liberty Mutual and the majority's attempts to characterize the fibromyalgia diagnosis as "conflicting" and "unsubstantiated" in the medical community. Regardless of the medical community's views regarding whether fibromyalgia may be associated with physical work-related injuries, at the time Liberty Mutual denied McKneely benefits there was no "conflicting" medical testimony or evidence. Indeed, the only evidence presented was from Dr. Weatherly's report. Dr. Hensarling's opinions and diagnosis were not even requested for review. There was no conflicting evidence at all – only "excerpts" of Dr. Weatherly's report were relied upon by Liberty Mutual for its denial of benefits. The fact that the medical community may disagree about whether fibromyalgia can be caused and related to physical employment injuries is irrelevant. No such testimony was presented at the time of Liberty Mutual's denial of benefits or at trial. In fact, the only medical evidence presented at trial, besides Dr. Weatherly's and Dr. Hensarling's opinions, was the opinion and diagnosis of Dr. Meyers who concurred with Dr. Hensarling as to the fibromyalgia diagnosis and treatment. Thus, the Fifth Circuit's review in ***Black v. Food Lion, Inc.***, 171 F.3d 308 (5th Cir. 1999), of the medical community's split on the diagnosis of fibromyalgia from work-related injuries is

16

not relevant here. That information was not before Liberty Mutual as evidence before its denial of benefits and was not presented at trial. This Court cannot as an afterthought justify Liberty Mutual's actions by "digging up" dicta concerning the medical community's conflicting opinions about fibromyalgia.

¶30. The circuit court judge, sitting without a jury, weighed the facts presented and applied the correct law. His findings should not be overturned. Thus, I would affirm the Court of Appeals' judgment affirming the circuit court's judgment in favor of McKneely. For the above-stated reasons, I dissent.

**EASLEY, J., JOINS THIS OPINION.**