United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 10, 2004**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 03-60851
_____

THELMA DAURO,

Plaintiff-Appellant,

versus

ALLSTATE INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Mississippi

_____

Before BENAVIDES, STEWART, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Thelma Dauro (Dauro) appeals the magistrate judge's grant of Allstate Insurance Company's

(Allstate) motion for summary judgment. Dauro alleged, *inter alia*, that Allstate had acted

negligently and in bad faith in processing her insurance claim. Dauro argues on appeal that the

magistrate erred by granting summary judgment despite the fact that Dauro had not fully completed

discovery. Additionally, Dauro contends that there remained genuine issues of material fact in dispute

which should have precluded entering summary judgment. For the reasons set forth below, we affirm

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

the magistrate's grant of summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 2, 1999, Thelma Dauro sustained neck and back injuries when an uninsured motorist rear-ended her vehicle at approximately 5 miles per hour. The impact also caused $1,380 of property damage to Dauro's vehicle. Dauro and her mother proceeded directly to the emergency room at Gulfport Memorial Hospital ("Memorial Hospital") for treatment. That same day, Dauro notified Allstate, her insurer, that she had been involved in an automobile accident with an uninsured motorist.

At the time of the accident, Dauro was insured under two Allstate auto policies which provided bodily injury coverage with a total limit of $20,000 per person and $1,000 in medical payment coverage. On August 3, 1999, an Allstate adjuster, John McCoy, spoke with Dauro about the accident. McCoy obtained a statement by phone from Dauro concerning the facts surrounding the accident. Dauro informed McCoy that she had sustained injuries to her back and neck and that she underwent tests and X-rays at Memorial Hospital's emergency room. Upon receiving this information, another Allstate adjuster estimated that Dauro's medical bills would not exceed $1,000, and thus advised Dauro that these costs would be handled under her medical payment coverage. The adjuster also told Dauro that Allstate would pay her $500. Dauro testified that the adjuster explained that this sum would be tendered for any "inconvenience" costs resulting from the accident. Dauro also testified that she did not agree to settle her claim and that she specifically requested that Allstate allow her additional time to evaluate the extent of her injuries for settlement purposes. Allstate claims that Dauro informed the adjuster that she did not anticipate the need for any further treatment and that the adjuster, in turn, informed Dauro that the $500 check would be paid in settlement of her

2

claim.

On August 4, 1999, two days after the accident, Allstate issued a $ 500 check to Dauro under her Uninsured Motorist (UM) coverage. The Allstate check had printed language stating: "For the final settlement of any and all claims for bodily injury - Uninsured motorists coverage." Dauro cashed the check and Allstate closed her file. On August 14th, 1999, Dauro signed an Allstate medical authorization form at the insurer's request permitting the release of her medical records to Allstate for purposes "including the verification, evaluation, and negotiation of the patient's claim." Allstate received Dauro's completed authorization form on August 17. Shortly thereafter, Dauro underwent an MRI which revealed that she had a herniated disk, requiring back surgery. Dauro was referred by her family physician to a neurosurgeon. For the next several weeks, Dauro repeatedly phoned Allstate to request advance payment of continuing medical expenses resulting from her accident, but her efforts were largely unsuccessful.

On January 20, 2000, Dauro filed suit against Allstate in a Mississippi state court, seeking compensatory and punitive damages resulting from Allstate's alleged fraud, misrepresentation, outrage, gross negligence, intentional or negligent infliction of emotional distress, and breach of good faith and fair dealing in handling Dauro's UM claim. Allstate removed the action to the United States District Court for the Southern District of Mississippi, where the case was assigned, by consent of the parties, to Magistrate Judge John M. Roper.

Meanwhile, Dauro, through counsel, sent Allstate some medical records and bills in January 2000, and sent additional medical records in June, 2000. Although Allstate offered Dauro $12,000 in settlement of her claims in July 2000, Dauro's counsel refused the offer, stating that settlement was premature as Dauro had not yet completed her medical treatment. In August 2000, Dauro underwent

back surgery to repair her herniated disk, which she claims was diagnosed in her October, 1999 MRIs. On September 7, 2000, Dauro's counsel sent Allstate medical records and bills from Dauro's back treatment and surgery. Allstate reevaluated Dauro's claim and in October of 2000 sent a letter advising Dauro that it would unconditionally tender the remaining limits of Dauro's UM policy. Although only $19,500 actually remained under the policy limits, when Allstate issued the settlement check, Allstate mistakenly "stacked" a non-motorized trailer -- which, though listed in the declarations, carried no UM coverage -- with Dauro's two insured vehicles. Consequently, Allstate paid Dauro $10,000 above policy limits, i.e. $29,500. Allstate has never asked that Dauro repay this $10,000.

On December 11, 2000, Dauro moved for leave to amend her complaint and remand the matter, or alternatively, for dismissal of the case without prejudice. The magistrate judge denied this motion on January 8, 2001. In June of 2002, Allstate filed a motion for summary judgment dismissing all claims or, alternatively, partial summary judgment on the issue of punitive damages. The magistrate judge denied Allstate's motion without prejudice to allow the parties additional time for discovery. On March 17, 2003, Allstate re-urged its summary judgment motion. Dauro requested and received an extension of time to respond and filed her opposition motion, together with a Fed. Rule Civ. P. 56(f) motion for continuance, on April 30, 2003. Dauro's summary judgment evidence included excerpts of her own deposition testimony, and the affidavit testimony of experts Gary Fye and Paul Roller. On May 16, 2003, Allstate filed its reply. On July 16, 2003, the magistrate advised the parties that it was continuing their July 28, 2003 trial date until the court ruled on the pending summary judgment and disqualification motions and that the court would "contact the parties regarding this matter upon a determination of [these] issues." On September 17, 2003, the magistrate

granted summary judgment in favor of Allstate on all claims. Dauro timely filed notice of appeal.

On appeal, Dauro contends that (1) the magistrate judge erred in granting summary judgment without first providing notice of its intent to take the matter under advisement and before Dauro had an adequate opportunity to depose key witnesses; and (2) the existence of genuine issues of material fact as to Allstate's bad faith handling of her claim precluded the magistrate's grant of summary judgment; alternatively, further discovery would enable Dauro to gather the summary judgment evidence necessary to defeat such a motion.

## STANDARD OF REVIEW

This Court reviews for abuse of discretion a "district court's decision to preclude further discovery before granting summary judgment." Resolution Trust Corp. v. Sharif-Munir-Davidson Dev. Corp., 992 F.2d 1398, 1401 (5th Cir. 1993) (footnote and citations omitted). "If it reasonably appears that further discovery would not produce evidence creating a genuine issue of material fact, the district court's preclusion of further discovery prior to entering summary judgment is not an abuse of discretion." Id. (citations omitted).

The district court's "grant of summary judgment itself . . . including the question whether the court provided the notice required by Fed. R. Civ. P. 56," is subject to this Court's *de novo* review. Id. (citations omitted). A summary judgment motion is properly granted only when, viewing the evidence in the light most favorable to the nonmoving party, the record indicates that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## DISCUSSION

I.      Whether the magistrate judge erred by granting summary judgment without giving adequate

notice and prior to the completion of anticipated depositions?

The magistrate judge's minute entry order of July 16, 2003, provides: "the trial is continued until the Court rules on the pending motion to disqualify and for summary judgment; the Court will contact the parties upon determination of the aforementioned issues." The trial had initially been scheduled for July 28, 2003. On September 7, 2003, the magistrate granted summary judgment in favor of Allstate, dismissing all of Dauro's claims with prejudice.

Relying primarily on this Court's decision in Resolution Trust, 992 F.2d at 1401, Dauro contends that the magistrate judge abused his discretion by granting summary judgment in favor of Allstate on all claims without first giving notice of its intent to take the matter under advisement and before Dauro had an opportunity to depose key witnesses or otherwise complete discovery.

Allstate counters that Dauro's reliance on Resolution Trust is misplaced, and that Dauro has not made the requisite showing to warrant postponement under Rule 56 (f) of a summary judgment ruling based on an asserted need for additional discovery.

We find that the circumstances presented in Resolution Trust are distinguishable from those in the instant case. In Resolution Trust, the district court entered summary judgment in favor of the plaintiff, after the defendants failed to respond to plaintiff's summary judgment motion prior to the deadline set by the local rules. This Court concluded that the district court's grant of summary judgment was an abuse of discretion because, on the facts presented, the judgment was entered "without notice that the court contemplated ruling on the motion for summary judgment, as required by Rule 56(c)," and the district court's actions had led the defendants to reasonably believe that the matter would proceed to trial.

Contrary to Dauro's assertion, in this case, unlike Resolution Trust, the magistrate judge did

6

advise the parties in advance of his intent to rule upon the pending summary judgment motion. Fed. R. Civ. P. 56 (c) contemplates "'ten day[s] advance notice to the adverse party that the matter will . . . be taken under advisement as of a certain day.'" Resolution Trust, 992 F.2d at 1402 (quoting Kibort v. Hampton, 538 F.2d 90, 91 (5th Cir.1976)). As noted above, the magistrate judge's minute entry order reflects that he continued the trial, which had been set for July 28, 2003, "until the Court rules on the pending motion to disqualify and for summary judgment; the Court will contact the parties upon determination of the aforementioned issues." Further, the magistrate judge did not enter summary judgment until two months later, far in excess of the 10 days notice required by Rule 56(c). Additionally, in contrast to Resolution Trust, in the instant case, Dauro did have an opportunity to file her response to Allstate's motion -- as well as a Rule 56 (f) motion for a continuance -- prior to the magistrate judge's ruling. This case simply does not present a situation where "[t]here was no reason for the [nonmoving party] to suspect that the court was about to rule on the motion," making the entry of summary judgment "improper." Id. at 1402 (citing Kibort, 538 F.2d at 91).

Accordingly, we find that the magistrate judge did not abuse its discretion by granting summary judgment before Dauro had an opportunity to depose additional witnesses.

II.     Whether the magistrate judge erred in concluding that no genuine issue of material fact existed precluding the grant of summary judgment dismissing Dauro's bad faith claims?

The court ruled that Allstate could not be held liable for the bad faith handling of Dauro's claims under Mississippi law, based on its determination that there existed an "arguable reason" for any delay occasioned by Allstate's conduct. The magistrate judge concluded that Dauro's generalized attacks on the allegedly bad faith Allstate claims handling policies and procedures, without linking these policies and procedures to the handling of *Dauro*'s claim, was insufficient to defeat Allstate's

7

summary judgment motion. The court further determined that Dauro presented no evidence that Allstate's allegedly bad faith quick settlement of her claim (the $500 check) was unreasonable because Dauro could have decided to forego the check; Dauro did not believe this check terminated her right to pursue her claim (she persisted in the pursuit of her claims notwithstanding the check); and it was unrefuted that Allstate immediately reopened her file and requested medical records upon being informed by Dauro's son in October of 1999 that his mother was still suffering from her injuries. Finally, the magistrate concluded that Allstate had an arguable reason not to tender policy limits until October, 2000, because (1) it had offered to settle her claims in July, 2000, but this offer was refused; (2) Dauro did not undergo surgery until August, 2000; and (3) Allstate did tender payment above policy limits within one month of receiving Dauro's complete medical records and medical bills, without which Allstate could not have settled the claim.

On appeal, Dauro primarily argues that Allstate's attempt to settle her claim under her UM coverage within 24 hours of her accident by issuing a $500 check knowing that she suffered neck and back injuries and its failure to pay her medical expenses in advance of her treatments -- or on a piecemeal basis prior to full settlement -- constitute bad faith handling of her claims. Although she concedes that she sent Allstate no medical records until January of 2000, and then sent only incomplete records at that time and once again 6 months later, Dauro insists that her execution of Allstate's medical authorization permitted the insurer to obtain these records directly from her doctors, and that it was Allstate's duty to do so. Dauro contends that these alleged breaches of Allstate's good faith and fair dealing duty to its insured are part of a broader scheme of the insurance carrier to cheat its insureds through the use of uniform claims adjustments policies and procedures that favor the carrier's bottom line to the detriment of its insured. Allstate counters that it cannot be

8

deemed to have committed bad faith under Mississippi law because it never denied Dauro's claim and it had an arguable reason for any delay in the payment of benefits under the policy.

The parties agree, and Mississippi choice-of-law rules dictate, that in this diversity case Mississippi substantive law governs this Court's decision. Genesis Ins. Co. v. Wausau Ins. Cos., 343 F.3d 733, 736 (5th Cir. 2003) (citations omitted). Under Mississippi law, "[i]n order to prevail in a bad faith claim against an insurer, the plaintiff must show [by a preponderance of the evidence] that the insurer lacked an arguable or legitimate basis for denying [or delaying payment of] the claim, or that the insurer committed a wilful or malicious wrong, or acted with gross and reckless disregard for the insured's rights." Liberty Mut. Ins. Co. v. McKneely, 862 So.2d 530, 533 (Miss. 2003). That "an insurer's decision to deny benefits may ultimately turn out to be incorrect does not in and of itself warrant an award of punitive damages if the decision was reached in good faith." Id. (citations omitted). Moreover, "[w]here an insurance carrier denies or delays payment of a valid claim, punitive damages will not lie if the carrier has an arguable reason for such denial or delay." Id. (citation omitted).

In this case, the crux of Dauro's argument is that genuine issues of material fact exist as to whether Allstate acted in bad faith in delaying payment of insurance benefits under her UM policy until her claim could be settled in full, and in failing to adequately investigate her claims. In Caldwell v. Alfa Insurance Co., 686 So.2d 1092, 1095 (Miss.1996), the Mississippi Supreme Court rejected nearly the identical argument in reviewing a circuit court's entry of summary judgment in favor of the insurer. Caldwell involved a cause of action brought by the estate of the deceased, Keith Caldwell, who was killed in a head-on collision with an uninsured motorist. A few months after being informed of Caldwell's death in February of 1991, Alfa commenced an investigation into the claim.

9

Thereafter, representatives for Caldwell's estate sent a demand letter to Alfa demanding payment under the terms of the Caldwell's policy by April 1, 1991. Alfa did not make a payment by the deadline established in the demand letter and Caldwell's estate brought suit, arguing that the Alfa had acted in bad faith in its handling of Caldwell's claims. In May of 1991, Alfa paid Caldwell's estate $202,000 under the policy terms. Nevertheless, the estate pressed forward with its suit alleging bad faith. The action was eventually dismissed on summary judgment.

The Mississippi Supreme Court affirmed, and found that the lapse of time in processing Caldwell's claims did not constitute tortious bad faith, in part, because Alfa had never actually denied Caldwell's claims. The Caldwell court held that the "wrongful denial of a valid claim" is the "linchpin for submission of the punitive damages [claim] to the jury." Caldwell, 686 So.2d at 1098. The Caldwell court reasoned that Alfa had not acted negligently because (1) Caldwell's claim had not actually been denied; (2) Caldwell's claim was paid by Alfa; (3) Alfa had exercised proper diligence by investigating the circumstances of the claim; and (4) the delay resulting from the investigation lasted only six weeks. Id.

This case presents circumstances that are closely analogous to those in Caldwell. In this case, Allstate: (1) never denied the claim and ultimately paid $10,000 in excess of Dauro's policy limits; (2) delayed payment pending receipt of Dauro's complete medical records, necessary to its investigation of the claim; and (3) tendered payment of Dauro's claim within 1 month of receiving these records -- and within 2 months of Dauro's back surgery. Although Dauro protests that Allstate's tender of a $500 check within 24 hours of her accident shows that Allstate committed bad faith in handling her claim, it is undisputed that Dauro did not believe that this check was offered in final settlement of her claims and that upon being notified by Dauro's son that Dauro had continuing

10

medical expenses, Allstate immediately reopened her case. Dauro does not dispute that Allstate requested that she obtain and send them her complete medical records and bills and/or execute a new medical authorization form after she retained counsel, in accordance with their company policy. Further, it is undisputed that Dauro did not sign a new release and that she failed to send Allstate her complete medical records and bills until September, 2000. Under these circumstances, Caldwell, compels the conclusion that Dauro contributed to the delay in payment by failing to cooperate with Allstate's investigation of the claim and that the one-month delay in paying her claim following the receipt of her complete medical records was not unreasonable. Therefore, the magistrate's ruling that Allstate had an arguable reason for delaying the claim and that Dauro failed to raise a genuine issue of material fact as to Allstate's conduct was correct.

## CONCLUSION

For the foregoing reasons, the magistrate's judgment in favor of Allstate is affirmed.

AFFIRMED.